579 So.2d 534 (1991)
John PUTT
v.
CITY OF CORINTH, a Municipality, and the Board and/or Commission of the Corinth City Gas and Water Department.
No. 07-CA-59335.
Supreme Court of Mississippi.
March 27, 1991.
Charles R. Wilbanks, Wilbanks Law Firm, Corinth, for appellant.
Jimmy B. Fisher, Corinth, for appellees.
Before ROY NOBLE LEE, C.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the court:

I.
This appeal arises from a seller's suit for breach of an oral contract for the sale of land. The Circuit Court entered judgment summarily, dismissing the suit, and en route refused to credit the municipal corporation buyer's minutes as a note or memorandum satisfying the statute of frauds.
We reverse.

II.

A.
John H. Putt is an adult resident citizen of the City of Corinth in Alcorn County, *535 Mississippi. At all relevant times Putt was the owner of certain commercial real estate in Corinth commonly known as the King Tractor Building. The property lies on Highway 45 South along the south side of Elam Creek Canal. Putt had most recently used it to operate a used car business known as P & M Motors. Putt was the Plaintiff below and is the Appellant here.
The City of Corinth is a municipal corporation and is the county seat of Alcorn County, Mississippi. The Corinth Gas and Water Department is an arm of the City of Corinth and is operated by the Corinth Public Utilities Commission, see Miss. Code Ann. § 21-27-13 (1972). These various entities were Defendants below and are Appellees here and are sometimes hereinafter collectively referred to as "the City."[1]
In the Fall of 1984, the Corinth Gas and Water Department was seeking a building suitable for housing its maintenance department and for storage of equipment and spare parts. Putt learned of this, and in December, 1984, he approached Wayne McGee, Department Manager, and Dennis Coleman, a Department employee, and told them his building was for sale. Putt's asking price was $100,000.00.
On January 14, 1985, McGee appeared at the regular monthly meeting of the Utilities Commission and reported his conversation with Putt. The Commission authorized Clifford G. Worsham, a Commission member, to inspect Putt's building and to explore purchase possibilities, including financing. Commissioner Worsham reported favorably at the February meeting, and, at that time, the Commission authorized Commissioner Leland Martin to negotiate a purchase agreement with Putt. A few days later, Martin and McGee, acting on behalf of the Commission, met with Putt. It seems that there was a metal shed or building on the property which the Commission saw no use for, and Martin and McGee suggested to Putt that he keep the shed but remove it from the premises and reduce the purchase price to $95,000.00.
On March 11, 1985, the Commission formally approved the purchase as evidenced by the following minute entry:

WAREHOUSE. Commissioner Martin reported that they had obtained the agreement of John Putt to sell the building on Old Highway 45 (Tate Street) to the City for $95,000.00 with him to retain the shed immediately north of the building. After discussion, the Commission found that the appraisal by Lou Miller was $100,000.00 and that the shed would be of little value to the Gas and Water Department and that the reasonable market value of the property was $95,000.00 and should be purchased for the use of the Water and Gas Departments. The purchase to be made with funds from the Gas Department and the Water Department to pay rent on the building.
These minutes were signed by C.R. Caviness, Chairman, and attested by Clifford G. Worsham, Secretary.[2] The Commission advised Putt of this action. There is no evidence the Commission and Putt agreed regarding any possible outstanding encumbrances or judgments or the matter of proration of taxes, omissions whose importance will presently appear.
Putt removed the shed from the land and then moved his used car business to another location. Putt had at-will renters on the premises, from whom he had been receiving $250.00 and $450.00 per month, respectively, and he terminated these tenants. Putt cleaned up the warehouse in preparation for closing. One Gas and Water Department employee said the Department had built shelves to install in the building after the sale was completed.
In time the Commission turned the matter over to its lawyer "to conclude the transaction." Brief of Appellee, filed October 17, 1988, p. 7. Upon examining title to the property and checking the courthouse *536 records, the Commission's lawyer found an outstanding deed of trust and, more importantly, two judgments enrolled against Putt and held by Ray Sewell Co., Inc., in the aggregate principal sum of $11,993.01. Putt secured the Alcorn Bank and Trust Company's release of the lien of the outstanding deed of trust. The Commission's lawyer prepared a separate release to be executed by Ray Sewell Co., Inc. regarding the judgment liens. Putt was not able to secure Sewell's release.
On May 9, 1985, Wayne McGee, manager of the Gas and Water Department, and acting on behalf of the Commission and the City, met with Putt in the office of the Commission's lawyer to close the sale. McGee had with him a Corinth Gas and Water Department check payable to Putt in the amount of $78,717.26, and advised that he was ready to conclude the transaction. The Commission's lawyer presented to Putt a closing statement as follows:

 JOHN PUTT PROPERTY
 CLOSING STATEMENT 5-9-85
PURCHASE PRICE 95,000.00
LESS: Withheld by Corinth pending settlement of Sewell
 judgment (- 16,000.00)
 ______________
 79,000.00
LESS: Prorate taxes
 City: 451.10
 County: 302.88
 ______
 753.98 =Putt @ 4.5/12= (-282.74)
 __________
Corinth Check to Putt 78,717.26

First, Putt objected to the $16,000.00 escrow withholding. He advised McGee and the Commission's lawyer that the judgments were on appeal to the Supreme Court of Mississippi and were covered by a bond sufficient to secure payment in the event his appeal failed.[3] Putt then relented and agreed to the withholding, provided only that the money held in escrow would draw interest payable to him at a reasonable rate. The Commission and its lawyer refused these terms.
Putt also disputed the proposed proration of ad valorem taxes. Putt said he had made his deal with the Commission in January of 1985 and, accordingly, that he should not be responsible for any taxes for the year 1985. The Commission, through its lawyer, disagreed and insisted upon proration as of the date of closing. Because they were unable to agree on issues of withholding and escrow to protect against the judgment liens and the proration of taxes, the City, the Commission and Putt did not close the sale.
The City and the Commission refused thereafter to purchase Putt's property and soon located an alternative site. On July 17, 1985, the Commission purchased this other property.

B.
On April 17, 1986, Putt commenced the present civil action by filing his complaint in Circuit Court of Alcorn County. Putt named the City, its Utility Commission, and its Gas and Water Department as Defendants and charged them with breach of contract and demanded actual and punitive damages.[4] The City denied the essential allegations of the complaint and pleaded, *537 inter alia, the statute of frauds. Miss. Code Ann. § 15-3-1(c) (1972); Rule 8(c), Miss.R.Civ.P.
On April 21, 1987, the City moved for summary judgment, asserting inter alia its statute of frauds defense. Rule 56, Miss.R.Civ.P. The matter was presented to the Circuit Court upon a series of affidavits and depositions. On April 29, 1988, the Circuit Court granted the motion and entered final judgment in favor of the City, dismissing Putt's complaint with prejudice.
Putt now appeals from this ruling.

III.
This Court has many times articulated the standard a trial court must use when considering a motion for summary judgment:
The trial court must review carefully all of the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied.
Bobby Kitchens v. Mississippi Insurance Guaranty Association, 560 So.2d 129, 133 (Miss. 1989); Clark v. Moore Memorial United Methodist Church, 538 So.2d 760, 762 (Miss. 1989); see generally, Holifield v. Pitts Swabbing Company, 533 So.2d 1112, 1114 (Miss. 1988). On appeal, our review is de novo; we view the matter as did the trial court. Willard v. Mayor and Aldermen of City of Vicksburg, 571 So.2d 972 (Miss. 1990); Young v. Jackson, 572 So.2d 378, 384 (Miss. 1990); Moore Memorial United Methodist Church, 538 So.2d at 762.
Our course is not as clear as it might have been made, as the Circuit Court, for better or for worse, filed no written opinion en route to granting the City's motion, nor are we otherwise afforded a direct insight into the Court's reasons for its decision. We perforce must resort to the City's Motion for Summary Judgment to divine the Court's premises. There we find the City assigning two grounds, viz:
(1) No one was authorized by the City to enter into a binding contract with Putt for the purchase of the subject property.
(2) There was no written memorandum of any alleged agreement and this action is barred by the statute of frauds. Miss. Code Ann. § 15-3-1(c), (1972).
We examine each issue and on each consider whether there is a genuine issue of material fact and whether the City is entitled to judgment as a matter of law.

IV.
The first point need not detain us. The January minutes authorized Commissioner Worsham to inspect the property and investigate possible purchase. In February, Commissioner Martin "was authorized to negotiate for the purchase of said property." The March 3, 1985, minutes formally authorized purchase for $95,000.00. The Commission turned the matter over to its lawyer who, together with Department Manager McGee, assembled on May 9 to close the sale. The facts strongly infer these two were authorized to act in the premises.
Without doubt or hesitation, we hold Putt made a showing on this first issue sufficient that his action survives the City's motion for summary judgment.

V.
We turn to the City's statute of frauds defense. Putt sues on a contract for the sale of lands, and we ask whether, on the present record, we can say that there is no genuine issue of material fact whether Putt and the City made their agreement in a form satisfying the law's requisites for enforceability.
People are able to contract for the purchase and sale of real property and have their contracts given effect because the law allows such. As with the other facilities our law affords persons for realizing their wishes, land sales contracts are attended *538 by certain formalities which, if not met, may leave the agreement a nullity and legally unenforceable. Cf. Williams v. Mason, 556 So.2d 1045, 1048 (Miss. 1990). We think of offer and acceptance, consideration, and the like.
As a general rule, Mississippi law does not require that contracts be made in writing. Put otherwise, oral contracts are ordinarily no less enforceable than others. See, e.g., Short v. Columbus Rubber and Gasket Co., 535 So.2d 61, 64 (Miss. 1988); Eastline Corp. v. Marion Apartments, Ltd., 524 So.2d 582, 584 (Miss. 1988); St. Louis Fire and Marine Insurance Co. v. Lewis, 230 So.2d 580, 582 (Miss. 1970); Canal Insurance Co. v. Bush, 247 Miss. 87, 154 So.2d 111, 119 (1963).
The legislature has enacted an exception to this general rule, to the end of reducing the risk that persons will be held to contracts they did not make. This exception performs an evidentiary function, and provides, in the present context, that
An action shall not be brought whereby to charge a defendant or other party ... upon any contract for the sale of lands, tenements, or hereditaments, ... unless ... the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing.
Miss. Code Ann. § 15-3-1(c) (1972). [Emphasis supplied] It is commonly known as the statute of frauds.
What is central to our inquiry today is whether there is in fact an otherwise legally enforceable contract of sale between Putt and the City. The existence vel non of such a contract is a question of fact. See, e.g., Harris v. Williams, 43 So.2d 364, 365 (Miss. 1949). Nothing in the statute of frauds requires that the contract itself be in writing. The statute is satisfied so long as there is "some memorandum or note thereof." For the prevention of frauds, the statute merely prescribes the form a part of the evidence must take. Oral testimony regarding the fact is admissible as well. Where the writing has been destroyed or is presently unavailable, the parties may employ parol evidence to prove "both its existence and contents." Williams v. Evans, 547 So.2d 54, 57 (Miss. 1989). The "memorandum or note" serves but to show "a basis for believing that the offered oral evidence rests on a real transaction," Franklin County Cooperative v. MFC Services (A.A.L.), 441 So.2d 1376, 1378 (Miss. 1983), "that a contract to sell ... has been made between the parties." Derden v. Morris, 247 So.2d 838, 840 (Miss. 1971). The statute as well pretermits
... dependence on the imperfect memory of the contracting parties, after the passage of time, as to what they ... agreed... .
Sharpsburg Farms, Inc. v. Williams, 363 So.2d 1350, 1354 (Miss. 1978), although on its facts today's case hardly implicates this concern.
Gulf Refining Company v. Travis, 201 Miss. 336, 30 So.2d 398 (1947), suggests the memorandum
... must contain words appropriate to, and indicating an intention thereby, to convey or lease land, must identify the land, [and] set forth the purchase price, ... .
Gulf Refining, 201 Miss. at 385, 30 So.2d at 401. These words are not in the statute itself and, in view of our more recent pronouncements just noted, should be seen as but indicia that the writing satisfies the statute's mandate that "some memorandum or note thereof" in fact exists.
The minutes of the Utilities Commission unmistakably authorized the present contract. They evidence an intent to buy, identify the land, set out the purchase price and otherwise meet Gulf Refining's indicia. These minutes are signed by the President and Secretary of the Utilities Commission and were, in fact, approved at a subsequent meeting. We hold that these minutes are a "memorandum or note" satisfying the statute. See generally, 72 Am.Jur.2d, Statute of Frauds § 295 (1974).
Beyond this, the present record provides an evidentiary basis upon which we may find that Putt and the City entered a valid and enforceable contract of sale. It *539 follows we may only find, on the question of the existence vel non of the contract, that there exists genuine issues of material fact precluding summary judgment.[5]See Rule 56(c), Miss.R.Civ.P.

VI.
The record fails to reflect a clear meeting of the minds on the two matters upon which the closing collapsed: an escrow to protect against judgment liens and proration of taxes. These are, to be sure, important details of any such sale but are not so central that the contract might fail for indefiniteness. Our law seems settled that in such circumstances the Court may imply reasonable terms by reference to external facts and custom and usage. See, e.g., Duke v. Whatley, 580 So.2d 1267, 1273 (Miss. 1991); Busching v. Griffin, 465 So.2d 1037, 1040 (Miss. 1985); Smith v. Mavar, 198 Miss. 170, 175, 21 So.2d 810, 811 (1945); Pugh v. Gressett, 136 Miss. 661, 691-92, 101 So. 691, 698 (1924); Mid-Continent Telephone Corp. v. Home Telephone Co., 319 F. Supp. 1176, 1192-95 (N.D.Miss. 1970); see also, Holmes, The Path Of The Law, 10 Harv.L.Rev. 457, 463-64 (1897). This is a matter the Circuit Court must address on remand.

VII.
We reverse the judgment below and remand the case to the Circuit Court of Alcorn County for such further proceedings as may be appropriate, as though that Court had denied the City's motion for summary judgment.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN and BANKS, JJ., concur.
McRAE, J., not participating.
NOTES
[1] No one challenges the premise that authorized actions taken by officials and agents of the Commission and the Department are in law taken as well on behalf of the City of Corinth, and we proceed on this premise throughout.
[2] The minutes of the Commission meeting on April 8, 1985, stated:

The minutes of the meeting of March 11, 1985, were read, considered and approved.
[3] On December 4, 1985, this Court affirmed a judgment against Putt in the principal sum of $8,994.98, but reversed a second judgment regarding attorneys' fees. See Putt v. Ray Sewell Co., Inc., 481 So.2d 785 (Miss. 1985).
[4] Putt makes no claim for specific performance. See Rule 54(c), Miss.R.Civ.P.
[5] For obvious reasons, nothing said here should be taken as intimating any view how these issues ought be resolved in remand. See, e.g., Parham v. Moore, 552 So.2d 121, 124-25 (Miss. 1989).