645 So.2d 867 (1994)
Roosevelt YARBROUGH, as President of the Board of Trustees of the Claiborne County, Mississippi, School District, Arnette Nash, Robert Tinsley, L.A. Buck and Wilbert Archer, as Members of the Board of Trustees of the Claiborne County Public School District, John C. Noble, as Superintendent of Education of the Claiborne County Public School District and the Claiborne County Public School District
v.
Zhukov R. CAMPHOR.
No. 91-CA-00300.
Supreme Court of Mississippi.
September 15, 1994.
Rehearing Denied December 21, 1994.
*868 Everett T. Sanders, Natchez, for appellant.
Joseph E. Roberts, Jr., Crymes G. Pittman, Pittman, Germany, Roberts & Welsh, Jackson, for appellee.
EN BANC.
McRAE, Justice for the Court:
This appeal arises from the February 26, 1991, Claiborne County Chancery Court judgment which awarded Zhukov R. Camphor twenty-five thousand dollars ($25,000.00) for being wrongfully discharged from his employment as Finance Director of the Claiborne County Public School District. The Board of Trustees for Claiborne County, Superintendent of Education of the Claiborne County Public School District, and the Claiborne County Public School District (hereinafter "Yarbrough") appeal and assign as error the following:
I. The chancery court was manifestly wrong in its findings of fact and conclusions of law.
II. The chancery court misapplied the law to the facts of this case.
Finding no error on appeal, we affirm the lower court's judgment.

STATEMENT OF THE FACTS
The minutes of the April 14, 1987 meeting of the Claiborne County Board of Education reveal that Zhukov Camphor was employed as a "Finance Director on a six (6) month probationary period with a salary of $25,000.00 a year" pursuant to the recommendation of John C. Noble, Superintendent of the Claiborne County Public School District. Shortly thereafter, on April 30, 1987, Noble informed Camphor through written communication that, due to his insubordination, he was suspended without pay effectively immediately. Noble informed Camphor that he could appeal the suspension in writing within five days. On May 1, 1987, Camphor submitted in writing a request for a hearing before the Board of Education. On May 18, 1987, Noble communicated to Camphor that he was terminated from employment with the School District.
On May 20, 1987, the Claiborne County Board of Education reinstated Camphor as Finance Director without a hearing. On May 21, 1987, Noble again informed Camphor through a third letter that his employment with the School District was terminated and that he should remove his personal belongings from his office. Camphor alleged that on May 26, 1987 and July 31, 1987, he requested in writing a hearing before the Claiborne County School Board of Education. Although the May 26, 1987 letter did not appear in the record before us, the July 31, 1987 letter did. It addressed the fact that he was experiencing difficulty and resistance from Noble upon returning to work on May 21, 1987, after the Board's reinstatement decision.
This saga continued when Camphor filed a complaint in the Chancery Court of Claiborne County on June 7, 1987 against Noble as Superintendent of the Claiborne County Public School District praying that the court issue a mandatory injunction restraining Noble from hindering the performance of his duties as Finance Director. Camphor claimed that, as a result of Noble's actions, he had been denied due process of law since this termination was arbitrary, without cause and no hearing was provided. Camphor later amended his complaint and added the Board of Trustees of the Claiborne County Public Schools and the Claiborne County Public School District as defendants.
On September 17, 1987, Camphor filed a motion for a temporary restraining order, *869 preliminary injunction and permanent injunction setting forth the same allegations. Camphor's motion also revealed that Noble had executed a criminal affidavit and complaint against him upon which a warrant for his arrest was issued by the Justice Court of Claiborne County, and, as a result, on July 25, 1987, he was convicted in justice court for disturbing the peace. The Chancery Court of Claiborne County granted a temporary restraining order but later denied the preliminary and permanent injunction request.
On October 22, 1987, School Board members filed a motion to dismiss arguing that Camphor was merely employed as a probationary employee for six months. They agreed that he was reinstated pursuant to the suspension imposed by Noble. However, the members argued that Camphor did not request a hearing nor receive one pursuant to his May 21, 1987 termination notice. Defendants claimed that Camphor had not exhausted his administrative remedies or afforded them an opportunity to review his situation by way of a hearing.
On December 8, 1987, the chancery court ordered that the School Board provide Camphor a hearing. On January 6, 1988, a hearing was held before Hearing Officer, Deborah A. McDonald, Attorney-at-Law. Ms. McDonald concluded that Camphor was a probationary employee and, therefore, could be terminated at will. It was not until July 6, 1988, that the Claiborne County Board of Education acted on the hearing officer's findings and, for the first time, terminated Camphor.
On February 5, 1991, the Claiborne Chancery Court found, inter alia, that Camphor was hired as Finance Director at the salary of $25,000.00 per year. The court found that the suspension and termination of Camphor by Noble was without authority of law. The chancery court also ordered that the Claiborne County School Board set aside Camphor's suspension and termination. The court further found that Camphor had been precluded from acting as Finance Director by the defendants and that Camphor never received his deserved salary, although he remained willing to resume the duties and obligations of his employment.

STANDARD OF REVIEW
When a trial judge sits without a jury, this Court will not disturb his factual determinations where there is substantial evidence in the record to support those findings. Omnibank of Mantee v. United Southern Bank, 607 So.2d 76, 82 (Miss. 1992). "Put another way, this Court ought and generally will affirm a trial court sitting without a jury on a question of fact unless, based upon substantial evidence, the court must be manifestly wrong." Tricon Metal v. Topp, 516 So.2d 236, 238 (Miss. 1987); Brown v. Williams, 504 So.2d 1188, 1192 (Miss. 1987). This Court must examine the entire record and accept:
that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact, must be accepted.
Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983). Finally, when the trial judge sits as the finder of fact, he has the sole authority for determining the credibility of witnesses. Bryan v. Holzer, 589 So.2d 648 (Miss. 1991); Bell v. Parker, 563 So.2d 594 (Miss. 1990).
Issues of law presented on appeal, however, are afforded de novo review by this Court. Omnibank of Mantee, 607 So.2d at 83; Watts v. Pennington, 598 So.2d 1308, 1311 (Miss. 1992); UHS-Qualicare v. Gulf Coast Community Hospital, 525 So.2d 746, 754 (Miss. 1987).

DISCUSSION OF LAW

A. FINDINGS OF FACT
Yarbrough contends that the trial court erred in several of its factual findings. First, Yarbrough maintains that there is no evidence in the record to support the finding that Camphor entered into an employment contract with the School District. However, we do not require all employment contracts to be in writing and have so stated that, "[o]ral employment contracts for a definite term of less than fifteen months are wholly *870 enforceable at law." Short v. Columbus Rubber and Gasket Company, Inc., 535 So.2d 61, 64 (Miss. 1988). See Eastline Corp. v. Marion Apartment, Ltd., 524 So.2d 582, 584 (Miss. 1988); St. Louis Fire and Marine Insurance Co. v. Lewis, 230 So.2d 580, 582 (Miss. 1970); Miss. Code Ann.Sec. 15-3-1(d) (1972). In Putt v. City of Corinth, 579 So.2d 534 (Miss. 1991), we held that the statute of frauds is satisfied as to the existence of a contract "so long as there is some memorandum or note thereof." Putt, 579 So.2d at 538. Clearly, the April 14, 1987 minutes of the Board which employed Camphor as Finance Director for $25,000.00 per year satisfy this requirement.
Yarbrough argues that Camphor was merely a probationary employee for a six-month period as indicated in the minutes of the Board, and, likewise, Camphor admits that he was employed on a six month probationary period. There is no dispute that Camphor was hired as a probationary employee and, thus, could be terminated if his suitability for remaining employed was in question. The chancellor, however, never directly held that Camphor was not a probationary employee; he only found that he was employed at a salary of $25,000.00 per year. As this opinion reveals, the question of whether he was a probationary employee is of no relevance to the outcome of the case.
Thirdly, Yarbrough contends that the court was in error in finding that Noble did not have the authority to terminate Camphor from his employment. Camphor was recommended by Noble and employed pursuant to such recommendation. Mississippi Code Annotated § 37-9-3 (1972) states:
Within the limits of the available funds, the superintendent of schools or administrative superintendent of a school district shall recommend to the school board thereof all non-instructional employees to be employed and may prescribe the duties thereof. Compensation for such employees may be paid from any lawful funds.
The superintendent of a school district also may suspend or dismiss any certified employee for "incompetence, neglect of duty, immoral conduct, intemperance, ... or other good cause." Miss. Code Ann. § 37-9-59 (1972). Camphor, on the other hand, was a non-instructional employee, which is defined as "all employees of school districts other than superintendents, principals and certificated employees." Miss. Code Ann. Sec. 37-9-1 (1972).
In any event, it is Mississippi law that the actual authority and power to remove any employee rests with the School Board. In Tutwiler v. Jones, 394 So.2d 1346 (Miss. 1981), we explained:
[I]f anything is clear, it is that the power ... remove district school employees for misconduct and to conduct hearings for that purpose has been completely withdrawn from that official [county superintendent] by the amended statute ... It is equally clear that the removal hearing is to be before the board of trustees, and the actual power to remove or not to remove rests with [the School Board].
Tutwiler, 394 So.2d at 1348 (emphasis added). Moreover, in Spradlin v. Board of Trustees of Pascagoula Municipal Separate School District, 515 So.2d 893 (Miss. 1987), we stated the language "may remove" in § 37-9-59 applies to limited cases where the teacher does not request a hearing. Spradlin, 515 So.2d at 897. See Everett v. Board of Trustees, Meridian Municipal Schools, 492 So.2d 277, 281 (Miss. 1986). Pursuant to the above, although a superintendent has the authority to suspend an employee, the ultimate power to terminate an employee lies with the school board.
Yarbrough next claims that there is absolutely no evidence in the pleadings that would support the finding that the School Board set aside Camphor's termination. In the Board's minutes, the language used only pertains to the suspension of Camphor, not the termination. The Board argues that it only considered Camphor's suspension and the issue of Camphor's termination was never before it during its May 20, 1987 meeting.
The chancellor, however, was not manifestly wrong in looking to the actual action taken by the Board after it was on notice that Noble by letter had attempted to terminate Camphor on May 18, 1987. In the minutes, the Board indicated that it had time *871 to evaluate the "situation." The Board then voted to "reinstate" Camphor as Finance Director and to put him "back to work." It is clear that the Board considered the entire "situation" in determining, on May 20, 1987, to reinstate Camphor thereby, obviously, setting aside any attempt by Noble to suspend and/or terminate Camphor's employment. Lastly, defendants claim that the lower court erred in its finding that they had precluded Camphor from performing his duties as Finance Director. Defendants contend that Camphor had already been terminated from the school district, and, therefore, he had no duties and responsibilities in light of his termination.
To the contrary, there exists substantial evidence that he was hindered from performing his duties. On the day after the Board reinstated Camphor, Noble sent him a letter purportedly terminating him from employment and advising him to remove his belongings. In addition, it is difficult to imagine any evidence that could more graphically illustrate Camphor's troubles than the proof that on July 20, 1987, Noble signed an affidavit which resulted in the arrest of Camphor for disturbing the peace. The basis for the warrant was Camphor's "continually returning to the office" when told not to return. The chancellor was not in error in this finding. As this Court will not disturb a chancellor's findings of fact where there exists substantial evidence in the record to sustain such findings, defendants' arguments that the chancellor's factual findings were erroneous fails.

B. CONCLUSIONS OF LAW
Yarbrough asserts that the chancellor was in error in concluding that Miss. Code Ann. § 37-7-301 (Supp. 1990) gives the School Board the authority to employ and fix the duties and compensation of non-instructional personnel pursuant to the recommendation of the superintendent of schools since it conflicts with Miss. Code Ann. § 37-9-3 (Supp. 1990).
Mississippi Code Ann. § 37-9-3 (Supp. 1990) supplies the Superintendent with the authority to recommend as well as prescribe the duties of those individuals recommended. The statute provides:
Within the limits of the available funds, the superintendent of schools or administrative superintendent of a school district shall recommend to the school board thereof all non-instructional employees to be employed and may prescribe the duties thereof. Compensation for such employees may be paid from any lawful funds.
Miss. Code Ann. § 37-9-3 (1972).
Keeping in mind that the above statute merely states that the Superintendent "may prescribe" duties of non-instructional employees, Miss. Code Ann. § 37-7-301 (Supp. 1990) gives the affirmative responsibility to employ persons to the School Board:
The school board of all school districts shall have the following powers, authority and duties in addition to all others imposed or granted by law, to wit:
(w) To employ and fix the duties and compensation of such ... non-instructional personnel deemed necessary pursuant to the recommendation of the superintendent of schools or the administrative superintendent.
Miss. Code Ann. § 37-7-301 (1972).
The question before this Court is what person or entity has the authority to employ and, in turn, the authority to fire non-instructional personnel. Yarbrough's argument that these two statutes conflict is erroneous, but even so, in interpreting different sections of the Code involving the same subject matter, we have explained:
The controlling rule of construction dispositive of this case is that each section of the Code dealing with the same or similar subject matter must be read in pari materia and to the extent possible each section of the Code must be given effect so that the legislative intent can be determined.
Mississippi Public Service Commission v. Municipal Energy Agency of Mississippi, 463 So.2d 1056, 1058 (Miss. 1985). See Wilbourn v. Hobson, 608 So.2d 1187, 1200 (Miss. 1992); Allgood v. Bradford, 473 So.2d 402, 411 (Miss. 1985); Lamar County School Board of Lamar County v. Saul, 359 So.2d *872 350, 353 (Miss. 1978). Moreover, we have stated:
It is a fundamental rule of statute construction that when two statutes encompass the same subject matter, one being general and the other specific, the latter will control. 1 Sutherland, Statutory Construction Section 2022 (3rd ed. 1943).

McCrory v. State, 210 So.2d 877, 877-88 (Miss. 1968).
Mississippi Code Ann. § 37-7-301 (1972) is more specific than Miss. Code Ann. § 37-9-3 (1972) since it explicitly grants the Board of Education the right to employ non-instructional employees. The chancellor, therefore, was not in error in concluding that the School Board has the authority to employ and fix the duties and compensation of non-instructional personnel.
In its conclusions of law, the Claiborne County Chancery Court held that defendants breached their contract of employment with Camphor because it was their duty to retain Camphor as Finance Director. Yarbrough contends that this conclusion of law is manifestly wrong since it is predicated upon facts that are not supported by the record.
Yarbrough argues that the Board never reversed the decision of Noble to terminate Camphor, and Camphor never asked for a hearing after the May 21, 1987 termination letter. Yarbrough's argument that the Board never reversed Noble's decision has no merit since Noble did not have the authority to make such a decision in the first place. Furthermore, contrary to Yarbrough, Camphor did on more than one occasion request, in writing, a hearing, and he orally did so on numerous other occasions. There is evidence of a July 31, 1987 letter in which Camphor asks the Board for assistance in clarifying the matter at hand. True, Camphor did have a probationary contract with the school board with a salary of $25,000.00 per year. However, this issue became moot since the Board did not terminate him until July of 1988, more than one year after the date on which he was employed by the Board. Accordingly, the chancellor was correct in this finding. Lastly, Yarbrough meritlessly asserts that Camphor is not entitled to a $25,000.00 judgment since he only asked for $11,500.00 in his amended complaint. However, what Camphor asked for was full back pay. Camphor was never paid for any work that he did as Finance Director, and it was not until July of 1988, over a year after the date he became employed, that the Board took appropriate measures to terminate him. At the time the amended complaint was filed the amount approximately owed to Camphor was $11,500.00. Camphor is entitled to recover full pay, not merely the amount that had accrued prior to the filing of the amended complaint because he remained ready and willing to continue his duties as Finance Director during the entire year. It makes no difference that Camphor was only a probationary employee since he was never properly terminated.
Judging from the record, the Claiborne County Board of Education and other appellants deplorably ignored the duties that their jobs require. Clearly, the Board of Education is vested with not only the authority to terminate non-instructional personnel but it is their responsibility too. The issue of whether he was merely a probationary employee is of no relevance to the outcome because Camphor was not terminated by the proper authority. The record indicates that Camphor on many occasions sought help from the Board to end this saga, and because the Board did nothing, Camphor is entitled to full back pay as he at all times stood ready to fulfill his position. The lower court's judgment stands affirmed.
AFFIRMED.
HAWKINS, C.J., and SULLIVAN, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
BANKS, J., dissents with separate written opinion joined by DAN M. LEE and PRATHER, P.JJ., and PITTMAN, J.
BANKS, Justice, dissenting:
I am compelled to dissent because the record simply does not support the conclusions and findings of the chancellor, nor those of the majority. The chancellor rendered his opinion without benefit of an evidentiary *873 hearing and, as far as I can tell, without briefs or argument, two and one-half years after the last appearance by or submission of counsel. It is little wonder that error is manifest.
The chancellor finds that Camphor had a "contract." The fact is that there was no written contract nor anything else to indicate that he was anything other than an employee at will, save the minutes of the board, which will be discussed below. He makes a "finding" that Superintendent John Nobles' letter terminating Camphor was "wrongful and without authority of law" with no subsidiary findings as to the merits of the termination nor a reference to any authority for the conclusion that the firing was without lawful authority. He makes a finding that the school board reinstated Camphor from his suspension "and termination" when the minutes of the meeting of the board reflect only that the suspension was at issue.[1] No mention was made of the May 18 termination. Moreover, the chancellor fails to treat the May 21 letter of termination after the May 20 board action. His other findings are of facts about which there is no contest but which dictate no particular result. He then concludes, curiously, that since the school board decided to hire Camphor, it had a duty to retain him. There is no reference to the terms under which he was hired nor any statutory right to continued employment. He then renders a judgment for $25,000 without any explanation whatever.
Taking the last first, Camphor's complaint sought only the "approximate amount of $11,500", the difference between what he had received and what he would have received for six months of employment and consideration for permanent employment. While there was an additional prayer for attorneys' fees and expenses, the record does not reflect any evidentiary basis for assessing an amount, nor does the order of the chancellor indicate that an award was being made for these items. Camphor took the position that what he actually had was a six-month contract, not a year's contract or a six-month probationary period.
The majority suggests that this prayer for relief merely reflected what was due at the time of the filing of the amended complaint. The record reflects otherwise. The amended complaint was filed on September 22, 1987. The six-month period ended on October 15, 1987. The amended complaint alleged payment of approximately $1000, one-half of a monthly salary of $2083.33, thus $11,500 would be full pay through October 15, that is one-half of $25,000 less $1000. Moreover, Camphor's prayer for relief asked only that he be given "consideration of permanent employment by the School Board" after the October 15 "end of his six (6) month probationary employment." This language is in the same paragraph as his back pay prayer making it clear that $11,500 was the sum total of monetary contractual relief claimed.
Thus, the chancellor's award exceeds the amount prayed for and the maximum amount sustainable based on Camphor's theory of the facts. Moreover, if the minutes of the board, which clearly say that Camphor was hired "on a six-month probationary period" are to be construed as denying the right to terminate for any reason or no reason at all during the probationary period, an evidentiary hearing on the matter is necessary. The chancellor has ignored the language altogether. Even if he agreed with Camphor that the language created a six-month contract, he would not be justified in awarding a year's salary. This is especially so in light of the fact that there was no prayer for a year's salary.
The majority states that there is no dispute but that Camphor was a probationary employee. The fact is that Camphor claimed below and claims here that he had a six-month contract during which he was not subject to termination as a probationary employee, or employee-at-will. The majority then goes on to say that it makes no difference because he was never properly terminated. The majority thus fails to deal with Camphor's contention below which, if followed *874 to its logical conclusion, would result in the contract automatically terminating on October 15, 1987, without further action of the board.
Turning for the moment to the question of proper termination, our statutory scheme is silent as to manner in which "non-instructional", "non-certificated" personnel are to be terminated, with or without cause. Such personnel may be hired only on the recommendation of the superintendent and they are inherently under the superintendent's administrative control. We have no statutory guidance as to whether a termination is effective without board action, however. Here the record reflects that the school board terminated the position on July 20, 1987, three months after it was created. If school board action is required, certainly this is it.
The questions now arise whether Camphor was entitled to a pre-termination hearing and, if so, whether he properly and timely demanded one and, assuming an affirmative answer to these, what is the proper remedy for the failure to have been accorded such a hearing. There is no statutory authority dictating a pre-termination hearing for any school personnel, save certified personnel. See generally, MCA §§ 37-9-59, 37-9-109 (Supp. 1994). It follows that if Camphor is entitled to such, it must be pursuant to contract or constitutional right.
As indicated earlier, there is no written contract here. Nor is there evidence of an oral or implied contract which speaks to the necessity of a pre-termination hearing. We observed in Harrison County School Board v. Morreale, 538 So.2d 1196, 1200 (Miss. 1989), with respect to non-certified personnel, that "[w]here there is no expressed contract of employment, a valid claim of entitlement must be grounded on some other legal sources, such as state statute or local ordinance or implied contract". There we adhered to the employment-at-will doctrine and held that a teacher aide had no statutory, contractual or constitutional right to a pre-termination hearing.
The defendant school board, through counsel, in discussion, did allude to personnel policies which give all employees a right to a hearing upon request. The board took the position that no such request was made. The personnel policies are not in the record and we are therefore left without guidance as to any contractual right to a hearing. That is, we do not know what the policies require of the employee concerning notice nor of the board or superintendent with regard to suspensions or termination. Moreover, and most importantly for our purposes, Camphor makes no assertion regarding personnel policies.
As noted above, Camphor's claim was that he could not be fired for six months. The following colloquy occurred when the court in pre-trial proceedings observed that the position had been abolished by the school board in July 1987.
THE COURT: Let me ask you this, Mr. Harper [attorney for Camphor]: If they got along just hunky-dory, that is, the Board and Mr. Camphor and Mr. Noble, and in July of this year the Board decided to abolish that position, do you think you would then have to call us back to 
A. I think we do, Judge, because I believe that the facts leading up to the employment of my client are just as important as what is in those school board minutes, and it had to do with the fact that Mr. Camphor was being considered for a one-year contract of employment and this was just a, as I understand it and as I believe the facts to be, it's not a probationary employee. It may say the word probationary in there but the fact remains that it was considered in appointing him for the entire year, and that this six months was just an afterthought  excuse me, the probationary part of it was just an afterthought and that these school minutes reflect that and I think the testimony elicited at trial would bear that out.
THE COURT: In other words, you think that the minutes of the school board would establish that a contract was made whereby he was given a one-year contract of employment?
MR. HARPER: I think the school board can at by its minutes to adopt terms of contract, Judge, and I've got cases to show that.

*875 THE COURT: I tend to agree with that, that they act through their minutes, but I'm asking you this: Do those minutes, do you contend that those particular minute establish that this man has a one-year contract with the Claiborne County Board of Education?
MR. HARPER: No, Your Honor. We believe that the facts leading up to that and even though there was a one-year consideration before the final determination that there was a six-month contract with the Board of serve as Finance Director.
THE COURT: In other words, it's your position that they could not fire him for at least six months?
MR. HARPER: Exactly. I believe that that is what the law will bear out on this case, Judge, that the Board is obligated to abide by the terms as expressed in its minutes.
Assuming his position to be factually and legally sound, Camphor would be entitled to back pay for six months. Neither the court below nor the majority asserts that this is a sound position, for to do so would require reading the word "probationary" out of the minutes.
The common understanding of probation is that one can be discharged for any reason other than an unlawful one during the probationary term. There is not an asserted unlawful reason for this discharge. If we hold that the superintendent has no statutory right to discharge, absent ratification by the board, the July 20 abolition of the position is, in my view, more than sufficient ratification. Camphor then may be entitled to some back pay for periods of time unpaid up to May 18 or 21 or even to July 20, but not past that time.
This litigation has been needlessly protracted by the chancellors' (both of them) fits and starts. Accepting the majority conclusion that board action was necessary to terminate, and in order to put an end to the matter, I would hold that the termination of Camphor's employment was not effective until the July 20 abolition of the position and that this matter be remanded to the chancellor for entry of judgment in the amount of $5575, which is a per annum rate of $25,000 for 96 days from April 14 until July 20, less $1000 previously paid, plus interest from and after July 20, 1987, at 8% or $1.22 per day until paid.
Because the majority eschews that course and chooses another not justified by the law, the facts or even the pleadings, I dissent.
DAN M. LEE and PRATHER, P.JJ., and PITTMAN, J., join this dissent.
NOTES
[1] The majority also asserts that it "is clear that the Board considered the entire `situation' in reinstating Camphor on May 20". Since the only thing that is in the record is the minutes it is difficult to determine how the majority arrives at this finding of fact.