797 So.2d 268 (2001)
Jason MURPHREE, Appellant
v.
W.W. TRANSPORTATION, Wayne Cook and Helen Cook, Appellees.
No. 1999-CA-00239-COA.
Court of Appeals of Mississippi.
February 13, 2001.
*270 B. Sean Akins, Ripley, for Appellant.
Richard Joseph Babb, Ripley, for Appellees.
Before SOUTHWICK, P.J., BRIDGES, and THOMAS, JJ.
BRIDGES, J., for the Court:
¶ 1. On May 28, 1996, Jason Murphree filed his complaint in the Circuit Court of Marshall County, Mississippi against W.W. Transportation (W.W.) and Wayne Cook for failure to repay a loan allegedly owed by W.W. to Murphree. On July 11, 1997, Murphree filed a motion to join Helen Cook as a defendant in the matter. The motion was granted and Helen Cook was joined on September 25, 1997, by order of the Honorable Henry L. Lackey, the presiding judge for this case. On May 27, 1998, a bench trial was conducted. Judge Lackey dismissed Murphree's complaint and entered judgment for W.W. and the Cooks finding that they were not responsible for the alleged debt evidenced by backdated promissory notes. On August 14, 1998, Murphree filed a timely appeal to this Court, asserting error on the part of Judge Lackey, citing the following issues for our review:
I. THE LOWER COURT FAILED TO RECOGNIZE THE VALIDITY OF THE LOANS APART FROM THE VALIDITY OF THE NOTES WHICH WERE PREPARED MONTHS LATER.
II. THE LOWER COURT ERRED IN FAILING TO ENFORCE THE NOTICE OF DISSOLUTION AND ITS INDEMNITY PROVISION.
¶ 2. Finding error on the part of the trial court, we reverse and remand this case to the lower court for further evidentiary findings regarding the purported underlying debt.

FACTS
¶ 3. Murphree was involved in financial consulting and counseling for failing businesses at the time that he entered into the alleged business relationship with W.W. Murphree's friend, William "Tim" Weatherford, was the acting president and sole shareholder of W.W. at the time that all of this trouble ensued. Murphree was purportedly approached by Weatherford in the summer of 1992 regarding financial problems with W.W. Murphree contends that Weatherford communicated to him that W.W. was suffering a cash flow problem, including bounced corporate checks, difficulties meeting payroll and a large indebtedness to the IRS for taxes the company could not pay. Murphree claims that he then offered to loan W.W. the money to help the company get back on its feet, the type of transaction that Murphree regularly performed in his business. The Cooks dispute that W.W. was in financial trouble at that time, and they assert that the *271 company was not in need of a loan from Murphree.
¶ 4. On separate occasions, Murphree allegedly loaned W.W. in excess of $50,000, some of which, Murphree claims, had been paid back to him in the form of corporate checks before he filed his complaint to recover the remaining $48, 270.44, which he argues is owed to him by W.W. This figure reflects the alleged loan amount minus any previous payments, plus interest. Murphree admits that, at the time he contends that these loans were extended to W.W., he did not secure the debt with a promissory note. Murphree asserts that he believed that Weatherford, with whom he had been dealing, as president and sole shareholder of W.W., was in a position to authorize such a loan on behalf of the company. Apparently, Murphree's presumption of this, added to the fact that Weatherford was a long time friend of his, caused Murphree to conclude that such formalities were not necessary.
¶ 5. In March 1993, Weatherford returned all of his stock to W.W. and resigned as president. Thereafter, Murphree was appointed as the new president in a special meeting of the Board of Directors of W.W. No evidence is brought forth by either party providing this Court with information on how Murphree came to be offered such a position with the company. Nonetheless, his duty as president was to oversee the day to day operations of W.W. Murphree, soon after, claims that he began negotiations with the IRS regarding payments on back-taxes owed by the company. However, before any actual meetings took place with the IRS, Murphree resigned as president of W.W., and on July 27, 1993, he entered into a "Notice of Dissolution" with Wayne Cook, who was the only remaining partner in the company. In this formal document, it was agreed by Murphree and Cook that their partnership in W.W. would be dissolved and Helen Cook would "assume all of the outstanding liabilities and obligations" of W.W., as well as the other two businesses that the Cooks owned together.
¶ 6. Although the parties disagree as to the exact date, at some point Murphree had the accountant at W.W., Debbie Holbrook, prepare a series of promissory notes, which were backdated to reflect the previous loans that Murphree argues that he made to W.W. Holbrook testified at the trial of this matter that the method she used to prepare these promissory notes was to simply look at old cash receipts and deposit slips of W.W. to determine the amount of purported loans received by the company. Holbrook then backdated the notes in an attempt to indicate the exact dates that each portion of the total loan was made. Murphree signed each of these notes on behalf of W.W. and Wayne Cook thereafter signed as a guarantor on the notes. Helen Cook, after the dissolution of the partnership between Murphree and the Cooks, took over W.W. as president, and Murphree then informed her that she was responsible for payments on the alleged loans which he formerly made to W.W., which are the center of the controversy before this Court.
¶ 7. Helen Cook denies that any loans by Murphree to W.W., if made, were ever approved by the company, and she argues that furthermore, after she took over the company, she never saw nor heard of such loans or notes until Murphree began demanding payments from her. She admittedly did not check the company's books upon taking her position as president, but she maintains that Murphree coerced her into signing the notice of dissolution that would purport to bind her to these debts.
¶ 8. At trial, Murphree presented evidence of receipts and deposit slips for previous payments made to him which he *272 claims are partial repayments of the loans he made to W.W. Murphree does not rest his case on the backdated promissory notes. Rather, Murphree asserts that the backdated notes are not the central issue in this case, as they were prepared by him only for the purpose of showing pre-existing debts owed by W.W. in an effort to help the Cooks obtain a separate SBA loan for the company. Murphree maintains that the alleged underlying debts owed him by W.W. were the primary issue for the lower court rather than these promissory notes, which the Cooks maintain were created dishonestly by Murphree for the purpose of swindling them. As such, Murphree claims error on the part of the trial court in considering the validity of the promissory notes rather than deciding on the validity of the underlying debt.

STANDARD OF REVIEW
¶ 9. On review of this matter, this Court must look to the entire record before us and determine whether the trial judge's factual determinations were supported by substantial evidence. Ezell v. Williams, 724 So.2d 396, 397 (Miss.1998); Yarbrough v. Camphor, 645 So.2d 867, 869 (Miss.1994). Furthermore, this Court must not disturb the findings of fact of the trial judge unless those findings are clearly erroneous. Crowe v. Smith, 603 So.2d 301, 305 (Miss.1992).
[W]hen a trial judge sits without a jury, this Court will not disturb his factual determinations where there is substantial evidence in the record to support those findings ... [p]ut another way, this Court ought and generally will affirm a trial court sitting without a jury on a question of fact unless, based upon substantial evidence, the court must be manifestly wrong.
Yarbrough, 645 So.2d at 869. This Court must examine the entire record and accept that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact. Cotton v. McConnell, 435 So.2d 683, 685 (Miss.1983).
¶ 10. When the parties agree to a bench trial and a jury is not the finder of fact, but rather a trial judge, he has the full authority to determine the credibility of witnesses, just as is the jury's duty in a jury trial. Yarbrough, 645 So.2d at 869.

LEGAL ANALYSIS
¶ 11. Debt or no debt? That is the question. We find error on the part of the lower court for not addressing the central matter of whether a valid debt exists between W.W. Transportation and Murphree, and instead, focusing only on the validity of the backdated promissory notes which we find to be of little relevance to this appeal. We find the principal argument by Murphree to be whether this purported debt exists and may be enforced as a matter of law.
¶ 12. In accordance with the standard of review, this Court may not overturn the decision of the trial judge unless, after looking at the record as a whole, we find that his decision was not supported by substantial evidence. We believe that to be the case here. We find that the trial judge did not render his judgment to dismiss Murphree's claim based on the validity of the alleged debt, that which we find to be the central issue in this case, but rather only concentrated his opinion on the validity of the promissory notes, which we have previously discerned to be only partially relevant. We do not intend to imply in our opinion that this debt claimed by Murphree is either valid or invalid or that it may or may not be enforced against the Cooks and W.W. These are questions that *273 this Court may not answer as a reviewing court that is limited to the facts and evidence in the record provided to it. As such, we hold that this matter must be returned to the trial court in order that the proper issues may be examined by way of further evidence and testimony as to whether the debt Murphree claims is owed him by W.W. is, in fact, legitimate and enforceable. Only the trial court can decide whether the alleged debt is, in fact, a corporate debt and whether Murphree, as the former president of W.W., could have had the apparent authority to bind W.W. to that debt. These points are pivotal matters on which the rest of this case turns and therefore, must be duly addressed before this action may properly be dismissed.
¶ 13. As was pointed out by Murphree, Mississippi courts may recognize and find enforceable certain contracts that are not made in writing. Putt v. City of Corinth, 579 So.2d 534, 538 (Miss.1991). An integral part of a court's decision in finding whether there is a contract or no contract between parties is having some evidence of such contract, including memoranda, notes, other documents or even oral testimony. Id. In cases where there is no writing to evidence the contract or the writing itself has been destroyed or lost, the parties may use "parol evidence" or outside evidence to prove that a valid contract existed and what the terms of that contract were meant to be. Williams v. Evans, 547 So.2d 54, 57 (Miss.1989). Written evidence of a contract serves the purpose of giving a finder of fact the basis to either believe or disbelieve oral testimony that a real transaction between the parties ever existed. Franklin County Cooperative v. MFC Services, 441 So.2d 1376, 1378 (Miss.1983). This law creates a starting point in the search for whether the alleged debt that we have in this case existed, and if so, whether the transaction between Murphree and Weatherford created an enforceable contract against the current president of W.W., Helen Cook.
¶ 14. Weatherford, the only other party present at the time of the alleged loan transaction, testified at trial that a loan in the amount of $50,000 was never made to W.W. Further, Weatherford stated that W.W. was never in financial trouble during that time and that Murphree was only asked to step in because his advice was needed about the company's computer system. Murphree presented evidence at trial such as copies of deposit slips and canceled checks which purport to show that Murphree, in fact, wrote checks to W.W. However, we find no evidence of specifically how these monies were used by W.W. or that there was intent of the parties here that these monies were, in fact, a loan which was meant to be paid back to Murphree. Further, there is no conclusive showing one way or the other on the issue of whether the company was in need of such a loan, a fact which the parties adamantly dispute. There are no minutes of the company which reflect what this purported loan was to be used for, nor was there any record of the corporation which would show this Court that anyone in the company other than Weatherford was even aware of these monies being deposited into the corporate account. As such, we conclude that on remand of this case, the central issue should be whether there was a valid and binding loan transaction between Weatherford and Murphree, and if so, specifically to whom and for what purpose? To adjudge such a question on the elusive evidence provided by the record would induce wide speculation as to the purpose of the monies represented by these checks from Murphree to W.W. and whether there was, in fact, a legally binding loan.
*274 ¶ 15. It stands to reason that to delve directly into a discussion on the law of corporate agency and corporate formalities before a valid loan has even been found to exist would be an exercise of putting the cart before the horse. Logically, the trial court must first decide if a valid and legally binding debt exists and then, if so, upon what party is it binding? Only with such definitive findings of fact by the trial court may this Court properly review the record on appeal. Without such findings, this Court would be in no position to conduct an accurate evaluation of this matter, much less to pursue an appropriate ruling.
¶ 16. The trial judge's dismissal of Murphree's claim was, in our opinion, based solely on the validity of the backdated promissory notes rather than the validity of the alleged debts themselves. It would be speculation on our part if we were to necessarily infer a conclusion by the trial judge that the debts were invalid simply because he found the notes to be void. Rather, it is our opinion that upon our remanding this case back to the trial court, the judge's decision should be explicit as to the existence and validity of the underlying debt, as that is the primary issue here. Speaking only to the notes does not clear up the ambiguity surrounding the alleged loans themselves as the two are not necessarily inseparable from one another. As previously noted, Murphree does not argue that he should be reimbursed for these loans based on the promissory notes, but rather pleads that he entered into a valid contract to lend money to W.W. and is therefore entitled to a favorable judgment with or without the notes.
¶ 17. This Court also abstains from a discussion on the issue of whether the trial judge should have enforced the "Notice of Dissolution" between Murphree and the Cooks as to Murphree's alleged loan to W.W. Again, it stands to reason that the issue of whether Helen Cook assumed a debt owed by W.W. to Murphree necessarily demands that it be settled whether a valid debt ever existed between them at all. W.W. and the Cooks cite the case of Smith v. H.C. Bailey Companies, 477 So.2d 224, 234 (Miss.1985), which provides that actual liability must be proven to exist before such an agreement may be enforced against a party. Without such inquiry, it may not be properly decided whether the parties intended that their agreement would apply to a particular debt. Id. In accordance with this concept, it is our opinion that the trial judge should reconsider the terms of the "Notice of Dissolution" in light of his ultimate decision as to the existence and validity of the alleged debt itself.
¶ 18. For the foregoing reasons, we reverse the decision of the trial court and remand this matter to the Circuit Court of Marshall County. On remand, this Court instructs that the trial judge should consider the validity of the alleged underlying debt owed to Murphree rather than the validity of the backdated promissory notes which we find are not entirely relevant to prove such an existing debt. Further, the trial court must decide whether, under the proper legal standards, Murphree submitted enough evidence that could have led to a finding in his favor. In doing so, we instruct that the lower court should consider whether Weatherford, as president and sole shareholder of the company at the time of the alleged loan transaction, had the authority to bind the company to such a loan agreement without adhering to strict corporate formalities, such as seeking and receiving prior approval to obtain a loan on behalf of the company from the remaining members of the Board of Directors and recording such approval in the corporate minute books as a record of the loan agreement.
*275 ¶ 19. Additionally, if the trial court finds that Weatherford had the apparent authority to bind the corporation to a loan agreement, it must be determined whether there, in fact, was an actual loan to the corporation for the purposes and benefit of the corporation itself rather than for Weatherford individually. As mentioned previously, Mississippi law does not require a contract to be in writing and as such, the question of whether an oral contract between two parties is binding is an issue of fact. Putt, 579 So.2d at 538. The trial court must delve into matters that were not formerly explored, looking to the evidence presented by Murphree at trial and assessing whether this evidence was sufficient to satisfy the court that there was, in fact, a binding oral contract between Murphree and W.W. requiring that the company have the responsibility of reimbursing Murphree for the alleged loans. Again, this is an issue of fact to be determined not by this Court, but by the trial court on remand of this matter. Upon the resolution of these matters, if the lower court finds that the debt was valid and binding, the court must take up the issue of the validity and nature of the Notice of Dissolution between Murphree and the Helen Cook, ultimately discerning whether Helen Cook is responsible for these loans by Murphree to W.W.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF MARSHALL COUNTY DISMISSING THIS CAUSE IS HEREBY REVERSED AND REMANDED TO THE TRIAL COURT FOR FURTHER FINDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
KING, P.J., PAYNE, THOMAS, LEE, IRVING, MYERS and CHANDLER, JJ., concur.
SOUTHWICK, P.J., concurs with separate opinion joined by McMILLIN, C.J., LEE, IRVING, MYERS, and CHANDLER, JJ.
SOUTHWICK, P.J., concurring
¶ 21. The opinion for the court reverses after having found that the lower court prematurely stopped its analysis of the facts presented at trial. I agree with that conclusion, which is based on the lower court's improper focus just on the validity of certain promissory notes. I write separately since in my view the court's opinion could be interpreted as concluding that there was only insubstantial and speculative evidence admitted to prove the existence of the debt. If that were true, then we should affirm the judgment of dismissal of the claims, not reverse. However, since there was evidence upon which the trial court could have relied to find a valid debt, I agree that we should reverse and remand.

Promissory Notes and Underlying Debt
¶ 22. The trial court found that the promissory notes were invalid as executed. Mr. Murphree and Mr. Cook each executed promissory notes some time after the loans were completed. At the time of execution, it is disputed whether Mr. Murphree had the authority to execute the promissory notes on behalf of the corporation. I agree that the promissory notes themselves are invalid and also agree with that this is not the dispositive issue.
¶ 23. Next, the trial court ruled on the issue of the personal guarantee of Mr. Cook on the promissory notes. These were also found invalid. Mr. Cook was not a party to the original debt and therefore new consideration was needed in order for the personal guarantees to be valid. It appears to me that the personal guarantees of Mr. Cook are void, just as the lower court held.
*276 ¶ 24. Despite the invalidity of the promissory notes and personal guarantees, the real question in this suit is the validity of the debt itself. The first issue there is whether Weatherford, who was the president, sole shareholder and one of only two members of the Board of Directors, could have had the authority to bind "his" company at the time of the loans. I believe we must answer that question, because it is one of law that controls whether a remand is justified. In my view Weatherford could be found on this evidence to have had the authority to bind his company to the loan.
¶ 25. The legal basis for finding Weatherford to have possessed adequate authority is this. An "executive officer of a close corporation, ... in carrying on the usual business of the corporation has the same apparent authority as a partner in a partnership as against third parties who in good faith rely upon his representations." Baxter Porter & Sons Well Servicing Co., Inc. v. Venture Oil Corp., 488 So.2d 793, 796 (Miss.1986). Accordingly, an executive officer while carrying on the usual business of the corporation would have the power to bind the corporation by his acts without adhering to the corporate formalities. The issue of Weatherford's apparent authority is a question of fact. Id. I agree that we should remand for that determination.
¶ 26. If Weatherford had the authority to bind the corporation to a loan agreement, another issue is whether there was ever an actual loan. The court's opinion states that this is the first issue and avoids addressing the corporate authority legal question until on remand the factual issue is resolved of whether a loan was ever made. What is the cart and what is the horse can be disputed, but there is no reason to remand unless there is potential both for a cart and a horse. Even if a loan were made, if based on this evidence it is legally impossible for the loan to be the obligation of the corporation and was only Mr. Weatherford's personal debt, then that is a legal question that should now be answered. Since Weatherford individually is not now a party in this suit, his possible obligations cannot support a remand. I have already described why I find that Weatherford could be found on these contested facts to have had the authority to bind his corporation.
¶ 27. As to whether a loan enforceable on someone was made, I find relevant that a contract need not be in writing. Putt v. City of Corinth, 579 So.2d 534, 538 (Miss.1991). The existence of an oral contract is an issue for determination by the fact-finder. Id. Here, we are dealing with an oral contract to lend money between Weatherford and Murphree for the benefit of W.W. Transportation, Inc. Evidence admitted at trial included the cancelled checks to W.W. Transportation, Inc. from the personal account of Mr. Murphree. Also, there was evidence of partial payments to Mr. Murphree. However, whether this is enough evidence of an oral contact between W.W. Transportation, Inc. and Mr. Murphree is a fact question. Again, the judge never reached these matters.
¶ 28. Of some difference with the court's opinion, I do not find as a matter of law that this evidence must be found to be speculative. If it were, then we should affirm. Instead, I find the evidence weak but not insignificant. On remand, though, the parties would not be limited to the evidence already submitted. Both parties can reconsider their evidentiary needs, but that is only because in my view Murphree did clear the hurdle of presenting at the first trial enough evidence to support both the existence of a loan and to have it found the obligation of the corporation.

*277 Notice of Dissolution

¶ 29. The court also found that the Notice of Dissolution that Mr. Murphree, Mr. Cook and Mrs. Cook signed, was not an indemnity agreement, but it referred to an indemnity agreement executed by the parties earlier which never existed or was not produced. Additionally, this Notice of Dissolution was found to be an agreement dealing with partnerships not corporations.
¶ 30. I do not agree that the dissolution agreement was referring to another document. The dissolution itself states clearly that Mrs. Cook "has assumed all of the outstanding liabilities and obligations of said businesses." The use of the word "has" suggests the past tense, which is the likely source of the trial court's concern about there being another document. Once it became clear, though, that there was no other document, the parties certainly were aware of that when the dissolution was signed. In that dissolution, Mrs. Cook agreed to assume the liabilities of the company in consideration of Mr. Murphree completely leaving the business. There is no difficulty with enforcing that, but there is one in refusing to enforce it.
¶ 31. As to the court's finding that the agreement deals with partnerships not this corporation, I find this an overly strict reading of the document. Regardless of the word "partnership," the agreement explicitly names W.W. Transportation Inc. as one of the businesses whose liabilities have been assumed. Some sloppiness in general language cannot override the specific reference to this corporation. Whatever the entity W.W. Transportation might have been (and we know that it was a corporation), its debts were assumed. Mrs. Cook is personally liable for the debts of W.W. Transportation, Inc. because she executed the "Notice of Dissolution."
¶ 32. This point just made does not resolve the case as the issue still exists of whether the loans for which Murphree seeks repayment were ever made and if they were, whether they were the obligations of the corporation and not just Weatherford individually.
¶ 33. With respect for the court's opinion, I express these separate reasons for reversing.
McMILLIN, C.J., LEE, IRVING, MYERS and CHANDLER, JJ., join this separate opinion.