LEE, J.,
for the Court.
PROCEDURAL HISTORY
¶ 1. On May 28, 1996, Jason Murphree filed a complaint in the Marshall County Circuit Court against W.W. Transportation (W.W.) and Wayne Cook for failure to repay a loan allegedly owed by W.W. to Murphree. W.W. and Cook filed their answer and ■ counter-claim on July 12, 1996, claiming that Murphree was in fact indebted to W.W. and Cook. In September 1997, the trial court granted a motion to join Helen Cook as a defendant. After a bench *242 trial, the judge dismissed Murphree’s complaint and found that Murphree was indebted to W.W. and the Cooks.
¶ 2. On August 14, 1998, Murphree filed an appeal to this Court arguing primarily that the trial court failed to recognize the validity of the loan. This Court reversed and remanded for the trial court to conduct further evidentiary findings regarding the purported underlying debt. See Murphree v. W.W. Transp., 797 So.2d 268 (Miss.Ct.App.2001). The trial court conducted a hearing on August 26, 2002, and, in an opinion issued on October 1, 2002, ruled in favor of W.W. and the Cooks, finding that there was no credible testimony presented to show that a valid loan had occurred between W.W. and Murphree. Aggrieved from this ruling, Murphree perfects his appeal again to this Court asserting that the trial court’s determination that there was no credible evidence to support the existence of loans was not supported by substantial evidence.
FACTS
¶ 3. In the early 1990’s, Murphree became involved with W.W., a trucking business in Marshall County. At that time the president of the company was Tim Weath-erford, who was also the sole shareholder of the company. Wayne Cook was Weath-erford’s partner, but did not own any stock in W.W. In the summer of 1992, amidst supposed financial problems with W.W., Murphree either offered or was asked to provide business assistance to Weather-ford. Murphree claims that he made a series of loans to Weatherford, for the purpose of helping the company get back on its feet. The Cooks disputed that W.W. was in financial trouble at the time, and they asserted that the company did not need a loan from Murphree.
¶ 4. On separate occasions, Murphree allegedly loaned W.W. in excess of $50,000, some of which, Murphree claims, had been paid back to him in late 1992 in the form of corporate checks. Murphree admits that, at the time he- made his alleged loans to Weatherford, he did not secure the debts with promissory notes or any other type of standard loan documents.
¶ 5. In March 1993, Weatherford returned all of his stock to W.W. and resigned as president. Thereafter, in a special meeting of the Board of Directors, Murphree was appointed as the new president. Murphree managed the day to day operations of W.W. and claims to have been in negotiations with the Internal Revenue Service regarding payments on back-taxes owed by the company. On July 27, 1993, Murphree resigned as president of W.W. and entered a notice of dissolution with the Cooks in which Helen Cook would assume all of the outstanding liabilities and obligations of W.W.
¶ 6. At some point after the alleged loans occurred, Murphree had the accountant at W.W., Debbie Overall, prepare a series of promissory notes, which were backdated to reflect the previous loans that Murphree argues he made to the company. Murphree signed each note on behalf of W.W. and Wayne Cook signed as guarantor. Once Helen Cook took over W.W. as president, Murphree informed her that she was responsible for the payments on the alleged loans.
DISCUSSION OF ISSUE
I. WAS THE TRIAL COURT’S FINDING THAT THERE WAS NO CREDIBLE EVIDENCE TO DETERMINE THE EXISTENCE OF LOANS SUPPORTED BY SUBSTANTIAL EVIDENCE?
¶ 7. In his sole issue, Murphree claims that the trial court’s finding that there was no credible evidence to deter *243 mine the existence of loans was not supported by substantial evidence. Our standard of review in such matters is well stated: this Court must look to the entire record before us and determine whether the trial court’s factual determinations were supported by substantial evidence. Ezell v. Williams, 724 So.2d 396(¶ 4) (Miss. 1998). We will not disturb the findings of fact of the trial court unless those findings are clearly erroneous. Crowe v. Smith, 603 So.2d 301, 305 (Miss.1992). Furthermore, when a trial judge, rather than a jury, is the finder of fact, he has the full authority to determine the credibility of witnesses, just as is the jury’s duty in a jury trial. Yarbrough v. Camphor, 645 So.2d 867, 869 (Miss.1994).
¶ 8. In his brief, Murphree asserts that since no other purpose has been shown for the payments to W.W., the payments must have been binding loan transactions. In support of his claim, Murphree relies mostly upon the testimony of Weatherford and Overall. At the remand hearing, Weatherford testified that a promissory note for $25,000, which was found after the original trial in 1998, was executed and prepared by Betty Bennett, Weatherford’s cousin and an employee at Merchants and Farmers Bank. Weatherford further testified that he wanted the transaction documented so that Murphree would get his money back. Overall testified that when she came to work for W.W., she asked what the deposit slips were for and was told they evidenced loans from Murphree. Overall then executed the back-dated promissory notes.
¶ 9. However, on cross-examination, Weatherford was unsure about the monetary amount of the promissory note and did not remember ever signing it. Weath-erford stated that he thought the amount was $2,000 rather than $25,000. An affidavit signed by Weatherford was admitted into evidence stating that Weatherford did not sign' a promissory note. Furthermore, Bennett testified that she did not remember Weatherford ever contacting her to prepare any documents nor did she recall Weatherford telling her he borrowed money from Murphree. Overall also admitted that the only financial documentation to support Murphree’s position consisted of the old deposit slips. Overall testified that Wayne Cook told her the deposit slips were the loans from Murphree. Wayne Cook denied ever telling Overall the purpose of the deposit slips.
¶ 10. In his order following the remand ■ hearing, the trial judge stated, “The Court has paid close and particular attention to the witnesses. Has taken into account their respective interest in the outcome, and their relationship to the central parties in this matter and does hereby find that no credible, believable testimony or evidence was introduced to convince the Court that the alleged promissory notes were valid and binding loan transactions between Weatherford and Murphree, or between W.W. Transportation and Jason Murphree.” The trial judge found Weath-erford’s testimony to be inconsistent and Overall’s to be unreliable. Although we may have reached a different conclusion, we cannot say that the trial judge’s findings were clearly erroneous or not supported by substantial evidence. Therefore, we find this issue to be without merit and affirm.
¶ 11. THE JUDGMENT OF THE MARSHALL COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICKj P.JJ., BRIDGES, *244 THOMAS, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.