# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-01807-SCT

*MELISSA WHITING*

*v.*

*UNIVERSITY OF SOUTHERN MISSISSIPPI, DR.*
*SHELBY THAMES OFFICIALLY AND*
*INDIVIDUALLY, DR. DANA THAMES*
*OFFICIALLY AND INDIVIDUALLY, AND DR.*
*CARL MARTRAY OFFICIALLY AND*
*INDIVIDUALLY, BOARD OF TRUSTEES FOR*
*INSTITUTIONS OF HIGHER LEARNING*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/17/2008 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KIM T. CHAZE |
| ATTORNEYS FOR APPELLEES: | JOHN SIMEON HOOKS |
| | LEE P. GORE |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 03/31/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE WALLER, C.J., DICKINSON, P.J., AND KITCHENS, J.

## KITCHENS, JUSTICE, FOR THE COURT:

¶1. Melissa Whiting appeals the Circuit Court of Forrest County's grant of summary judgment dismissing all claims against the Mississippi Board of Trustees of Institutions of Higher Learning, the University of Southern Mississippi, Dr. Shelby Thames, Dr. Dana Thames, and Dr. Carl Martray. For the reasons that follow, we affirm.

**Facts**

¶2.    The following facts are taken verbatim from the Federal Court of Appeals' decision

in *Whiting v. University of Southern Mississippi*, 451 F.3d 339, 341-43 (5th Cir. 2004).[1]

> In September 1996, Dr. Melissa Whiting became an assistant professor in the
> Department of Curriculum, Instruction, and Special Education in the College
> of Education and Psychology at USM.  In May 1997, the Board of Trustees of
> the State Institutions of Higher Learning approved her for tenure-track status.
> From 1996-2002, Dr. Whiting and the Board executed nine-month
> employment contracts for each of the six academic years that fell during that
> period. Those contracts state that they are subject to the "laws of the State of
> Mississippi and the policies and bylaws of the Board."
>
> As a member of the USM faculty, Dr. Whiting received the Faculty Handbook
> and the College of Education and Psychology Policy and Procedures for
> Tenure and Promotion. These handbooks contain language that notes "these
> procedures collectively constitute contractual due process – the sum total of
> the procedural guarantees explicit and implicit [in the tenure process]."  The
> Faculty Handbook further provides for annual evaluations and, for tenure-track
> faculty, a third year review.  The Handbook also states that successful tenure
> reviews neither promise nor guarantee eventual tenure, which is only obtained
> by discretionary grant of the Board of Trustees.  The Faculty Handbook also
> states that decisions regarding tenure are normally communicated to the
> applicant by May 1.
>
> During her time at USM, Dr. Whiting received five annual evaluations, and in
> each received the highest marks in the categories of teaching, research, and
> service. These same categories are used as criteria in evaluating suitability for
> tenure and promotion.  Defendants Dr. Dana Thames and Dr. Carl Martray
> prepared, reviewed, and/or signed each annual evaluation.  Dr. Whiting also
> underwent a third year review, based on the same criteria, and again received
> top marks in the above categories.

---

[1]After her complaint was filed in state court, the case was removed to federal court.
None of Whiting's federal claims survived the defendants' joint motion for summary
judgment in federal court, after which the case was remanded.

At the beginning of her sixth year of employment, Dr. Whiting submitted herself for consideration for both tenure and promotion (to associate professor). As part of the process, she submitted a dossier documenting her suitability for tenure and promotion. The dossier focused on the three major areas highlighted in her prior evaluations: teaching, scholarship and publication (research), and service. Dr. Whiting alleges that her department chair, Dr. Thames, intentionally provided Dr. Whiting with flawed advice, ordering her not to include certain research materials in her dossier. Dr. Whiting further alleges that during the tenure process Dr. Thames and another faculty member, Dr. Reeves, "began a quest to scuttle [her] career," by intimating that Dr. Whiting had committed academic fraud. Dr. Whiting further alleges that Dr. Thames sought to isolate Dr. Whiting through departmental cliques and by placing her in a separate building from the rest of the faculty. She also alleges that Dr. Thames was displeased by Dr. Whiting's remarks about student rights that reflected poorly on Dr. Thames's administration of the department.

USM's review of Dr. Whiting's application began with a committee of faculty from her department. At their meeting, questions arose over certain articles listed in the publication section of her dossier. The committee chair and Dr. Thames met with Dr. Whiting and requested a written response to these questions. Dr. Whiting submitted her response, including an explanation of the methodology and analysis used to write several of her published articles. After the committee reconvened and considered her response, it voted to award promotion, with six in favor, three against, and two abstentions. The committee voted against awarding tenure, however, with six against, four in favor, and one abstention. The committee's summary report notes a general agreement that Dr. Whiting wait to request tenure until she had completed her sixth year of teaching (a tenure candidate may request deferral of the tenure process until the seventh year of employment).

Both the committee chair and Dr. Thames notified Dr. Whiting by separate letter of the committee's conclusions and suggested that she consider withdrawing her request for early tenure. Dr. Thames prepared a written recommendation to the Dean of the College of Education and Psychology, Dr. Carl Martray, regarding the committee's decisions. In that report, Dr. Thames expressed her agreement with the committee's concerns, but informed him that Dr. Whiting still wished to move forward with both the tenure and promotion processes.

Dr. Whiting's dossier, as well as the recommendation to Dean Martray and a rebuttal letter from Dr. Whiting, came before the College Advisory Committee ("CAC"), a group of representatives from each department in her College. The

3

CAC noted the disparity between Dr. Whiting's high marks in her annual evaluations and the "more negative" report of the tenure and promotion committee. After undertaking its own review of Dr. Whiting's credentials, the CAC concluded "that it appeared that the annual evaluations of the chairs in the past were more optimistic than the credentials justified during many of the years." The CAC's report noted concerns that Dr. Whiting's body of work at that time "was not adequate and did not meet college research standards." The CAC voted to deny tenure and promotion, each vote tallying to four against and two in favor, with no abstentions. Dean Martray reviewed the CAC recommendations and Dr. Whiting's dossier, concluding that he had "no compelling reason to recommend against the CAC's determination." He transmitted Dr. Whiting's materials to the Provost, without recommendation for either promotion or tenure. Dean Martray notified Dr. Whiting of his decision and included the copies of the CAC's reports, reminding her that she retained the option to withdraw her application and request deferral to her seventh year.

Dr. Whiting chose to continue with the promotion and tenure process. Accordingly, her dossier came before the University Advisory Council ("UAC"). The UAC met twice to review her materials. On the advice of her attorney, Dr. Whiting declined invitations to attend these meetings, and presented UAC members with a letter alleging failures of due process and violation of her due process rights under the Fourteenth Amendment. Ultimately, the UAC voted to award tenure (five voted in favor, three against, and one recusal), but did not reach a conclusion as to promotion (four in favor, four against, and one recusal). Those votes, in addition to another supplementary letter from Dr. Whiting, were then submitted to the Provost, who concurred with the UAC's recommendation as to tenure, and further recommended promotion. He notified Dr. Whiting of his recommendation by letter on May 17, 2002.

Dr. Whiting's dossier thus came before University President Shelby Thames, father of Dr. Dana Thames, who had taken that office on May 1, 2002. On August 23, 2002, President Thames wrote to request a meeting with Dr. Whiting to discuss concerns about her application. Dr. Whiting chose not to meet with President Thames. On August 30, 2002, President Thames wrote to Dr. Whiting to inform her that he would not recommend her to the USM Board of Trustees for tenure or promotion. That letter further gave notice that Dr. Whiting's employment at USM would not be renewed after the academic year ending May 2003.

Dr. Whiting appealed to the Board of Trustees on September 16, 2002. In forwarding her request to the Board, the Commissioner of Education

4

recommended that the Board decline to consider the appeal. The Board did so unanimously, because Dr. Whiting had already filed suit, and notified Dr. Whiting of its decision by letter to her attorney on November 21, 2002.

**Procedural History**

¶3. On August 6, 2002, Whiting filed her complaint in the Forrest County Circuit Court, complaining of the state law claims discussed below, and federal claims alleging deprivation of substantive and procedural due process pursuant to Section 1983 of the Civil Rights Act of 1964. The defendants filed their notice of removal to federal court on August 19, 2002. The United States District Court for the Southern District of Mississippi granted summary judgment to the defendants on all federal claims, and remanded the state claims to the Circuit Court of Forrest County.

¶4. Dr. Whiting appealed that decision to the Fifth Circuit Court of Appeals, which affirmed the district court. ***Whiting***, 451 F. 3d 339 (5th Cir. 2006). In that decision, the Court of Appeals ruled that, pursuant to Mississippi law, the subjective expectation of the grant of tenure did not create a protected property interest, and, as such, Dr. Whiting's federal claims regarding both procedural and substantive due process failed insofar as they were based on deprivation of a property interest. ***Id.*** at 346. The federal appeals court further found that Dr. Whiting had failed to meet her burden of production with respect to a deprivation of a liberty interest. ***Id.*** at 348. That court also affirmed the district court's dismissal of Dr. Whiting's claims regarding discrimination as a "class of one" and her claim that she was denied tenure in retaliation for her exercise of her First Amendment rights. ***Id.*** at 350. Ruling that the only questions left were those of state law, the federal appeals court

5

affirmed the district court's order remanding the case to the Circuit Court of Forrest County. *Id.* at 352.

¶5. Upon remand, the defendants moved for summary judgment on the remaining state law claims, which the circuit court granted. In its Opinion and Order, the trial court, noting a lack of clarity with respect to the claims in the complaint submitted by Dr. Whiting, ruled first that any claim related to breach of contract was precluded as a matter of Mississippi law, citing in a footnote the Fifth Circuit's holding that there is no legitimate expectation of continued employment on the part of a nontenured faculty member. *See Whiting*, 451 F.3d at 344-345. The court further ruled that Dr. Whiting's claims relating to a deprivation or violation of her right to due process were subject to the Mississippi Tort Claims Act. The court found that, in filing suit prior to a final decision by the Board of Trustees, Dr. Whiting had failed to exhaust all administrative remedies.

¶6. In addition, the trial court ruled that guarantees of due process under the Mississippi Constitution depend on the showing of a protected property interest. The court found that Dr. Whiting had failed to establish an issue of material fact regarding the deprivation of any property interest. The court ruled that summary judgment was therefore proper, thereby disposing of all claims founded upon a theory of violation of due process.

¶7. Dr. Whiting filed her motion for reconsideration on September 25, 2008, which the trial court denied on October 6, 2009. Dr. Whiting timely perfected this appeal from the trial court's grant of summary judgment to the defendants.

6

**Standards of Review**

¶8.     A trial court's denial of a motion for reconsideration under Rule 59 or Rule 60 of the Mississippi Rules of Civil Procedure is reviewed for an abuse of discretion. *City of Jackson v. Internal Engine Parts Group, Inc.*, 903 So. 2d 60, 66 (Miss. 2005); *Stringfellow v. Stringfellow*, 451 So. 2d 219, 221 (Miss. 1990).

¶9.     A trial court's grant of summary judgment is reviewed *de novo*. *Hubbard v. Wansley*, 954 So. 2d 951, 956 (Miss. 2007). Summary judgment will be granted only when there is no genuine issue of material fact to be decided and the moving party is therefore entitled to judgment as a matter of law. *Mink v. Andrew Jackson Cas. Ins. Co.*, 537 So. 2d 431, 432-33 (Miss. 1988). "A material fact is one which resolves any 'of the issues, properly raised by the parties.'" *Strantz ex rel. Minga v. Pinion*, 652 So. 2d 738, 741 (Miss. 1995) (quoting *Stegall v. WTWV, Inc.*, 609 So. 2d 348, 351 (Miss. 1992)). To withstand summary judgment, the party opposing the motion must present sufficient proof to establish each element of each claim. *Galloway v. Travelers Ins. Co.*, 515 So. 2d 678, 684 (Miss. 1987). Further, he must present more than a mere scintilla of colorable evidence to support his claims. *Luvene v. Waldrup*, 903 So. 2d 745, 748 (Miss. 2005). Additionally, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleadings, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). The evidence must be sufficient that a fair-minded jury could return a favorable verdict. *Id.* The mere allegation of material fact is insufficient to generate a triable issue of fact and avoid summary judgment. *Palmer v. Biloxi Reg'l Med. Ctr.*, 564 So. 2d 1346, 1356 (Miss.1990). Specifically, "the plaintiff may not rely solely upon the

unsworn allegations in the pleadings or 'arguments and assertions in briefs or legal memoranda.'" *Id.* (quoting *Magee v. Transcon. Gas Pipe Line Corp.*, 551 So. 2d 182, 186 (Miss. 1989)). In summary, if a genuine issue of material fact is found, the trial court shall deny summary judgment; otherwise, the trial court shall grant the motion where the movant is entitled to judgment as a matter of law. M.R.C.P. 56(e); *Miller v. Meeks*, 762 So. 2d 302, 304 (Miss. 2000) (citing *Brown v. Credit Center, Inc.*, 444 So. 2d 358, 362 (Miss. 1983)).

**Analysis**

¶10. Dr. Whiting's argument may be summarized as follows: First, her claim is based upon a breach of contract theory and therefore is not procedurally barred by the requirement of the MTCA that all administrative remedies must be exhausted. Second, she argues that the faculty handbook, taken as an integral part of her contract with the Board, guarantees procedural and substantive due process with respect to her application for tenure. She argues further that the defendants – specifically Dr. Shelby Thames, then president of the university, and Dr. Dana Thames – acted in bad faith, and were motivated by bias or animus against her, in sabotaging her qualifications, refusing to recommend tenure, and refusing to rule on her tenure application once it had reached the president's office. She argues that her claim is not based on an expectation of future employment but upon a contractually guaranteed right to due process. Finally, she argues that this Court should grant injunctive relief and should order a fair hearing on her tenure application.

¶11. The defendants contend in turn that the trial court did not err in ruling that the MTCA erected a procedural bar to Dr. Whiting's filing suit prior to an appealable ruling from the Board. Further, they argue that injunctive relief is not appropriate because Dr. Whiting

8

cannot show any imminent threat of irreparable harm that is not otherwise addressed and is without an adequate legal remedy.

¶12.   Briefly restated for clarity, Dr. Whiting concedes that she had no legitimate expectation of tenure as a result of her prior tenure-track employment contracts, but argues instead that the actions of then-President Thames and the Board in refusing to rule timely on her application, and by implication, grant her tenure, constituted a violation of her rights to procedural and substantive due process.  She further argues that the Circuit Court of Forrest County erred in ruling that the MTCA's requirement that all administrative remedies be exhausted prior to her bringing suit against the State or its agency meant that her claim was procedurally barred. Specifically, she alleges that the MTCA does not apply to claims based upon an alleged breach of contract.

¶13.   To the extent that Dr. Whiting's claims are based purely upon a breach of contract theory, we find that, as a matter of law, that no contract was formed between Dr. Whiting and the Board with respect to an offer of tenure.  Further, the Fifth Circuit Court of Appeals's ruling that Dr. Whiting had no protected property interest that entitled her to due process considerations is applicable here, as the analysis of due process considerations under the Mississippi Constitution is coextensive with federal law on this point.

¶14.   It is, of course, a basic principle of the law of contracts that a contract is not formed between the parties absent the essential elements of offer, acceptance, and consideration. ***Gatlin v. Methodist Med. Ctr., Inc.***, 772 So. 2d 1023, 1029 n.3 (Miss. 2000) (citing ***Putt v. City of Corinth***, 579 So. 2d 534, 538 (Miss. 1991)).  Insofar as Dr. Whiting's claim relates to a guarantee of tenure, that argument is without merit in that the Board, the only entity

9

capable of forming a valid employment contract with her, never made to Dr. Whiting an offer of a tenured position. It is settled law in this state that the subjective expectation of tenure does not create a property interest that is guaranteed by the right to substantive and procedural due process. *Wicks v. Miss. Valley State Univ.*, 536 So. 2d 20 (Miss. 1988).

¶15. At the core, Dr. Whiting's argument, to the extent that it makes out a specific claim for relief, is that her contract with the Board, as memorialized in the handbook, guaranteed a fair and impartial hearing with respect to her tenure application, and the defendants denied her that opportunity. While she attempts to characterize these claims as breach of contract, a fair reading of the facts of this case and the manner in which Dr. Whiting lays out her argument establish that if there were a claim to be made, it would be for tortious breach of contract and tortious interference with contract. As such, the claims made against the Board or the university are governed by the provisions of the MTCA.

¶16. The MTCA provides, in relevant part, that the state, and by extension the Board, is

> immune from suit at law or in equity on account of any wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract, including but not limited to libel, slander or defamation, by the state or its political subdivisions, or any such act, omission or breach by any employee of the state or its political subdivisions, notwithstanding that any such act, omission or breach constitutes or may be considered as the exercise or failure to exercise any duty, obligation or function of a governmental, proprietary, discretionary or ministerial nature and notwithstanding that such act, omission or breach may or may not arise out of any activity, transaction or service for which any fee, charge, cost or other consideration was received or expected to be received in exchange therefor.

Miss. Code Ann. § 11-46-3(1) (Rev. 2002). We have interpreted the phrase "any wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract" to mean that the MTCA covers both tortious breaches of contract and breaches of

10

implied terms and warranties of a contract. *City of Jackson v. Estate of Stewart ex rel. Womack*, 908 So. 2d 703, 710 (Miss. 2005). The MTCA, of course, provides a limited waiver of immunity for claims arising from tortious acts of governmental agencies and their employees. Miss. Code Ann. § 11-46-5(1) (Rev. 2002). Recovery is limited by statute to $500,000. Miss. Code Ann. 11-46-15(1)(c) (Rev. 2002).

¶17. The MTCA further provides that notice of a claim must be brought only after all administrative remedies have been exhausted. Miss. Code Ann. § 11-46-11 (Rev. 2002). This Court previously has held that, with respect to a contract for employment with an entity governed by the Board of Trustees of State Institutions of Higher Learning, failure to complete the internal grievance process for an alleged wrongful termination does not satisfy the requirement that administrative appeals be exhausted for purposes of the MTCA. *Harris v. Miss. Valley State Univ.*, 873 So. 2d at 988 (Miss. 2004).

¶18. The Mississippi Constitution provides that responsibility for the management and control of the institutions of higher learning of this state is vested in the Board of Trustees of State Institutions of Higher Learning ("the Board"). Miss. Const. art. 8, § 213A. That section provides, in relevant part:

> [The] board shall have the power and authority to elect the heads of the various institutions of higher learning, and contract with all deans, professors and other members of the teaching staff, . . . for a term not exceeding four (4) years; but the board may terminate any such contract at any time for malfeasance, inefficiency or contumacious conduct, but never for political reasons.

Miss. Const. art. 8, § 213A. In addition, Mississippi Code Section 37-101-15(f) (Rev. 2007) states, in relevant part, "[t]he Board shall have the power and authority to . . . contract with

11

all deans, professors, and other members of the teaching staff . . . for a term of not exceeding four (4) years."

¶19.    A valid employment contract with the University of Southern Mississippi cannot exist unless and until the Board of Trustees of State Institutions of Higher Learning approves a nomination by the university's president. As a matter of statute, this is the only valid avenue for the creation of a valid contract for employment. *Bruner v. Univ. of S. Miss.*, 501 So. 2d 1113, 1115 (Miss. 1987). All contracts, therefore, entered into with instructors or professors at the university properly are construed as contractual agreements with the Board and not with the several institutions it supervises or their respective employees. The university and its officers, notwithstanding the fact that they act as agents of the Board, are not parties to any contract formed between the Board and Dr. Whiting. The university and the other defendants named in their individual capacities therefore are free of liability with respect to whatever contractual obligations the Board may have undertaken with respect to Dr. Whiting.

¶20.    With respect to contracts of employment, contractual obligations may arise from, and the provisions of a contract may be modified by, employee manuals. *Bobbitt v. The Orchard, Ltd.*, 603 So. 2d 356 (Miss. 1992). The Board, in general, outlines general policies regarding faculty promotion and tenure that are supplemented by more specific policies at the university level. To determine what rights to procedural due process arose as a result of Dr. Whiting's contractual relations with the Board, it is necessary to examine the university's provisions regarding the grant of tenure and the application process as outlined in the handbook that was provided to Dr. Whiting. The substantive policy of the university is

outlined in Chapter X of the handbook, and the procedure is outlined in Chapter XI, entitled "Faculty Personnel Actions: Procedure and Contractual Due Process."

¶21.    The faculty handbook that is  part of the record on appeal defines contractual due process as "the sum total of the procedural guarantees, explicit and implicit, afforded by a contracting employer to a contracting employee for the regulation and enforcement of the substantive terms of employment." These guarantees refer, with respect to the grant or denial of tenure, to the internal review process that culminates in a recommendation by the president to the Board and the candidate's ability to appeal an adverse decision.

¶22.    Speaking directly to the substantive rights regarding a tenure-track position, the handbook  defines academic tenure as "a qualified expectation of continuing employment." It further states: ". . . academic tenure is a privilege granted on a basis of professional promise and value within the structure of goals and objectives pursued by academic units of appointment by schools, divisions, and colleges of which academic units of appointment might be component parts; by the University; and by the Board of Trustees."  The handbook also provides that the process by which application for tenure is reviewed resides primarily at the departmental level.  A tenured faculty member may be removed only for cause, and the dismissal of a tenured faculty member is subject to its own procedural guarantees. Tenured faculty are "protected against involuntary suspension or termination of employment except upon stipulated grounds and in accordance with specified procedures."  In summary, once a faculty member has been granted tenure, she has a legitimate qualified expectation of continued employment, the statutory bar to appointments longer than four years' length notwithstanding.

¶23. According to the handbook, the president is delegated exclusive authority over all personnel nominations and recommendations to the Board, which in turn retains sole authority to execute those nominations and recommendations. The president's legal responsibility in this regard is explicitly nondelegable. That nondelegable legal responsibility notwithstanding, the Board Policies and Bylaws, as cited in the handbook, require the "University President to establish institutional bodies and to define and follow contractual due process in all institutional deliberations involving tenure and dismissal."

¶24. In the College of Education and Psychology, the application process begins, after the applicant's notice to the departmental chair, with a recommendation by secret ballot of a representative tenure and promotion committee of the applicant's department. The recommendation of that committee is passed on to the College Advisory Committee for Promotion and Tenure, composed of elected, tenured members of the faculty. After a full and confidential review of the applicant's dossier, evaluations, service record, and any other materials that are deemed relevant, the College Advisory Committee votes on whether to recommend or deny tenure, and that recommendation is forwarded to the dean of the College. If the recommendation is negative, the candidate may withdraw her dossier from further consideration by notifying the dean within five working days of the dean's receipt of the dossier from the College Advisory Committee. The dean conducts further de novo review of all personnel recommendations.

¶25. Assuming the dossier is not withdrawn, the dean then will forward the dossier to the University Advisory Committee ("UAC"). The UAC is composed of the chairs of the College Advisory Committees, and serves as an advisory body to the provost of the

14

University, the chief academic officer for the University. One of the functions of the UAC is "to review the merits of faculty members recommended for promotion in rank and for academic tenure, assuring general uniformity of standards within the University, and submitting favorable or unfavorable judgments to the Provost." To promote the neutral character of the review process, the handbook provides that members of the University Advisory Committee must recuse themselves from any personnel matter concerning a faculty member of the college they represent. Further *de novo* review is conducted by the provost (the chief academic officer for the University), who then transmits his recommendation to the president. The president then is responsible for a further level of *de novo* review prior to submitting his recommendations to the Board. To summarize, five levels of independent and *de novo* review occur prior to the application to the Board of a candidate for tenure, and the Board has exclusive authority to grant tenure and form contracts for employment.

¶26. The handbook provides a separate vehicle for appeals by aggrieved personnel. A faculty member may appeal any recommendations or other personnel actions, including termination and denials of tenure, at any point and from any body making the recommendation, to the person or committee having oversight of the deciding body, as outlined above. More specifically, an aggrieved faculty member may appeal any action directly to the Board of Trustees. The handbook, citing the Board Policies and Bylaws, states that upon receiving appeals, the Board reviews all relevant documentation and "determines 1) if established substantive and procedural employment policies and procedures were followed within the University, and 2) if the personnel decision was arbitrary and capricious."

15

¶27. Here, Dr. Whiting does not dispute that she did not wait for a final decision from the Board regarding her tenure application, and neither does she dispute that the president has substantial discretion over final recommendations regarding tenure decisions, or that the Board has final discretionary authority over all personnel matters. She alleges merely that the president refused to give her application a fair hearing because his familial relationship with her departmental chair biased him against her application. She makes this allegation without any evidentiary support beyond her suspicion as articulated in her deposition and in the pleadings and motions incorporated in the record.

¶28. Dr. Whiting consistently overlooks that the tenure review process involves several layers of functionally independent review. At no point during the review process, prior to the provost's recommendation, was there anything that resembled a broad consensus, much less unanimity, among the review committees, even after Dr. Whiting had sent letters attempting to rebut allegations that her research dossier, at that point, was not strong enough to warrant a grant of tenure. Dr. Whiting's failure to meet with the president, which she said was on the advice of her attorney, does nothing to support her contention that she was deprived of a fair hearing. As she cannot show that either President Thames or the Board acted outside their duly-authorized discretion in denying her application for tenure, her contention that they breached an obligation to provide due process to her is without merit.

¶29. To the extent that her claims are based on an alleged violation by the Board of her rights to due process as guaranteed by the Mississippi Constitution, this argument also is without merit. It is clear that there is no legitimate expectation of employment for a nontenured faculty member that creates a protected interest. *Wicks*, 536 So. 2d at 23 (Miss.

16

1988). Written tenure policies do not, of themselves, create or confer an expectation of continued employment. *Id.* Dr. Whiting, contrary to the explicit statements of the handbook, asserts that the policies as outlined created a legitimate expectation of the grant of tenure. As this argument is in plain conflict with the facts that the grant of tenure is within the sole discretion of the Board and the sole power to transmit recommendations rests with the university president, it is without merit.

¶30. Dr. Whiting further attempts to escape her obligation to exhaust her administrative remedies by arguing that injunctive relief is categorically unaffected by the MTCA. Citing *Greyhound Welfare Foundation v. Mississippi State University*, 736 So. 2d 1048 (Miss. 1999), she argues that the MTCA does not extend sovereign immunity to claims asking for injunctive relief. That exception does not apply here. Generally, mandatory injunctive relief is applicable only when there is an imminent threat of irreparable harm and there is no adequate remedy at law. *Punzo*, 861 So. 2d at 348. Relief should be granted only where it is reasonably practicable. *Id.* The injunctive relief for which Dr. Whiting is asking is, in essence, for a judicial mandate that the University provide her a tenured position. As it is clear that the procedural guarantees, as crafted by Board and university policy and as outlined in the handbook, do not create an automatic right to tenure, injunctive relief is not appropriate, and this request is without merit.

**Conclusion**

¶31. Dr. Whiting failed to wait for a final decision by the Board regarding approval of her application for tenure prior to filing suit. Her claims based on tortious conduct in general, tortious breach of contract in particular, and breach of an implied contractual term or

17

warranty are foreclosed by her failure to adhere to the requirement of the Mississippi Tort Claims Act that all administrative remedies be exhausted prior to filing suit. Further, Dr. Whiting failed to meet her burden of production in response to the defendants' summary judgment motion to show that there was a genuine issue of material fact that would prevent the trial court's concluding that the defendants were entitled to judgment as a matter of law. This Court therefore affirms the Circuit Court of Forrest County's grant of summary judgment.

¶32.    **AFFIRMED.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, CHANDLER, PIERCE AND KING, JJ., CONCUR.**