# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CT-01190-SCT

*EDWARD SPRINGER*

*v.*

*AUSBERN CONSTRUCTION CO., INC.*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 05/08/2014 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | REX F. SANDERSON |
| | BARRETT JEROME CLISBY |
| ATTORNEYS FOR APPELLEE: | MARK D. HERBERT |
| | SABRINA BOSARGE RUFFIN |
| | BRADFORD COLEMAN RAY |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 10/19/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     A Lafayette County jury awarded Ausbern Construction Company, Inc. (Ausbern) a verdict of $182,500 against Chickasaw County Engineer Edward Springer in his individual capacity for tortious interference with a road-construction contract. On appeal, the Mississippi Court of Appeals reversed the $182,500 judgment and rendered judgment in favor of Springer. *Springer v. Ausbern Constr. Co., Inc.*, 2016 WL 4083981, at *1 (¶ 1) (Miss. Ct. App. Aug. 2, 2016). The Court of Appeals held that the element of tortious

interference that constitutes malice was not satisfied because Springer's actions were not without right or justifiable cause. *Id*.

¶2. Although the lack of evidence demonstrating malice was dispositive to the decision to reverse and render, a majority of the Court of Appeals alternatively held that Ausbern's claim against Springer had implicated the Mississippi Tort Claims Act and the trial court had erred by failing to grant Springer's motion to dismiss due to lack of presuit notice. *Id*. Our review of the record does not support the Court of Appeals' conclusion that Springer raised the issue of presuit notice in his motion to dismiss. Although Springer raised lack of notice as an affirmative defense in his answer to Ausbern's first amended complaint, he simply argued that he was entitled to immunity in support of his motion to dismiss. While we do not disturb the dispositive holding reached by the Court of Appeals resulting in the rendered judgment in favor of Springer, we grant Ausbern's petition for writ of certiorari resolve the Court of Appeals' perceived conflict between *Zumwalt v. Jones County Board of Supervisors*, 19 So. 3d 672 (Miss. 2009), and *Whiting v. University of Southern Mississippi*, 62 So. 3d 907 (Miss. 2011).

¶3. In short, we hold that *Whiting* did not overrule, *sub silentio*, *Zumwalt* as the Court of Appeals presumed in reaching its alternative holding. *See Springer*, 2016 WL 4083981, at *5 (¶ 22). To be certain, we overrule *Whiting* to the extent it held that a claim for tortious interference with a contract is subject to presuit notice requirements of the Tort Claims Act. As more fully explained below, Ausbern's claim against Springer in his individual capacity for tortious interference with the contract did not trigger the presuit notice requirements of

2

the Tort Claims Act.

## FACTS AND PROCEDURAL HISTORY

¶4. In November 2010, Ausbern was awarded a contract with Chickasaw County for a road-construction project. Ausbern's low bid for the contract was based on unit specifications prepared by the office of Chickasaw County's engineer, Springer. Springer had estimated that 7,689 cubic yards of 304A fill material would be required. The project actually required 17,700 cubic yards of the unit material.

¶5. On January 23, 2012, Ausbern filed a formal claim for payment for the overage with the State Aid Office. On February 2, 2012, State Aid Division Engineer Joel Bridges sent a letter to Springer, acknowledging the error of the estimated quantity of the unit material. Bridges recommended payment to Ausbern for 17,700 cubic yards of the unit material at the contract price per unit. On March 1, 2012, Springer sent a letter to Ausbern admitting the discrepancy between the estimated amount of unit material and the unit material actually used for the project. In an effort to mitigate Ausbern's claim for the contract adjustment, Springer offered Ausbern eight dollars per cubic yard for the overage rather than the contract unit price of $19.50. Ausbern declined to negotiate.

¶6. On March 29, 2012, Ausbern filed a complaint against the Board of Supervisors of Chickasaw County, alleging breach of contract. On July 12, 2012, Ausbern filed an amended complaint adding Springer as a defendant in his individual capacity for tortious interference with the contract. Ausbern alleged that a binding contract existed between Ausbern and the County as of November 23, 2010. Ausbern alleged that Springer, who had knowledge of the

3

contract, intentionally, willfully, and with malice toward Ausbern induced the County to breach its contractual obligations. On August 15, 2012, Springer filed an answer to the amended complaint, arguing that Ausbern had not complied with the notice requirements of the Tort Claims Act.

¶7. The jury awarded Ausbern $387,793.50 against the County for breach of contract. The County did not appeal the judgment. The jury awarded Ausbern $182,500 against Springer for tortious interference with the contract. Springer appealed following the trial court's denial of his motion for judgment notwithstanding the verdict (JNOV) or, alternatively, for a new trial.

¶8. On appeal, the Court of Appeals reversed the $182,500 judgment against Springer and rendered judgment because the element of tortious interference that constitutes malice was not satisfied. *Springer*, 2016 WL 4083981, at **1, 5 (¶¶ 1, 22). A unanimous Court of Appeals held that

> Springer acted within the scope of his responsibility to the County and without bad faith. Because his actions were not "without right or justifiable cause," the element of tortious interference that constitutes malice was not satisfied.

*Springer*, 2016 WL 4083981, at *1. Despite Ausbern's claim against Springer for tortious interference with the contract failing as a matter of law due to no evidence of malice, an essential element of the tort, the Court of Appeals proceeded to address a separate issue not necessary to its decision.

¶9. According to a majority of the Court of Appeals,

> Springer argued pretrial in his motion to dismiss and argues again here on appeal that the tortious-interference claim against him as a governmental

> employee implicated the Mississippi Tort Claims Act and that Ausbern was therefore required to comply with the Act's pre-suit notice requirements. *See* Miss. Code Ann. § 11–46–11(1) (Rev. 2012); *Ivy v. E. Miss. State Hosp.*, 191 So. 3d 120, 122 (¶ 8) (Miss. 2016). We agree with Springer's argument that the notice requirements of the Mississippi Tort Claims Act are applicable to the claim against him.

*Springer*, 2016 WL 4083981, at *4 (¶ 17).

¶10. Relying on language from *Whiting*, the majority took the position "that claims of tortious interference with a contract brought against an individual governmental employee implicate the pre-suit notice requirements of the [Tort Claims Act]." *Id*. at *4 (¶ 18) (citing *Whiting*, 62 So. 3d at 915 (¶ 15)). The majority held that the claim against Springer implicated the Tort Claims Act, and that Springer's motion to dismiss due to lack of presuit notice should have been granted. *Id*. at *1 (¶ 1). The majority ultimately concluded that, "[a]bsent resolution of any conflict between [*Whiting* and *Zumwalt*] by the Mississippi Supreme Court, we agree with the approach of treating *Whiting* as the applicable rule." *Springer*, 2016 WL 4083981, at *5 (¶ 22). And because "the prerequisite of statutory pre-suit notice was not attempted, [] waiver of sovereign immunity was not accomplished." *Id*.

¶11. In contrast, Judge Wilson's separate opinion[1] urged that, "by proceeding against Springer individually without serving notice under the [Tort Claims Act], Ausbern was simply following the clear holding of the Mississippi Supreme Court's opinion in *Zumwalt v. Jones County Board of Supervisors*, 19 So. 3d 672 (Miss. 2009)." *Springer*, 2016 WL

---

[1] Chief Judge Lee, Presiding Judge Griffis, and Judge Fair joined in Judge Wilson's separate opinion.

4083981, at *6 (¶ 26) (Wilson, J., concurring in part and in result). Following *Zumwalt*, Judge Wilson determined that "Ausbern properly sued Springer 'as an individual' on a non-[Tort Claims Act] claim for tortious interference with a contract—indeed, per *Zumwalt*, Ausbern was required to pursue the claim on that basis." *Id*. at *6 (¶ 27). Judge Wilson concluded that, because malice is an essential element of a claim for tortious interference with a contract, the County was immune from liability for any alleged tortious interference by Springer, and Ausbern properly proceeded against Springer individually rather than serving presuit notice[2] on the County. *Id*. at *7 (¶ 28). Judge Wilson relied on *Zumwalt* because it followed directly and logically from the plain language of the Tort Claims Act, but he agreed with the majority that *Whiting* "appears to conflict with *Zumwalt* insofar as it suggests that a claim for tortious interference with a contract is subject to the [Tort Claims Act]." *Id*. at *7 (¶ 29).

¶12. While the lack of proof of malice was case-dispositive, we grant certiorari to clarify whether *Whiting* overruled, *sub silentio*, *Zumwalt*'s holding that a claim for tortious interference with a contract is not subject to the Tort Claims Act's presuit notice requirements.

## STANDARD OF REVIEW

¶13. "When considering a motion to dismiss, this Court's standard of review is de novo." *Scaggs v. GPCH-GP, Inc*., 931 So. 2d 1274, 1275 (¶ 6) (Miss. 2006).

## DISCUSSION

---

[2] It is undisputed that Ausbern did not provide presuit notice under the Tort Claims Act. *Springer*, 2016 WL 4083981 at **2, 7 (¶¶ 7, 28).

6

**Whether Ausbern's claim for tortious interference with a contract was subject to the presuit notice requirements of the Tort Claims Act.**

¶14. The Tort Claims Act provides immunity for the state and its political subdivisions "from suit at law or in equity on account of any wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract, including but not limited to libel, slander or defamation, by the state or its political subdivisions, or any such act, omission or breach by any employee of the state or its political subdivision[.]" Miss. Code Ann. § 11-46-3(1) (Rev. 2012). The Tort Claims Act waives immunity for the state and its political subdivisions "from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment[.]" Miss. Code Ann. § 11-46-5(1) (Rev. 2012).

¶15. "An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." Miss. Code Ann. § 11-46-7 (Rev. 2012). However, "an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation[.]" Miss. Code Ann. § 11-46-5(2) (Rev. 2012).

¶16. Before *Zumwalt* and *Whiting*, the Court decided *McGehee v. DePoyster*, 708 So. 2d 77 (Miss. 1998). In *McGehee*, an elementary school principal brought a defamation action

7

against the superintendent of the school district both individually and in his official capacity. *Id*. at 78 (¶ 1). As in the case *sub judice*, the issue before the Court was whether the Tort Claims Act's notice provision of Mississippi Code Section 11-46-11(1) (Rev. 2012) was applicable to actions brought against a government employee in his individual capacity. *Id*. at 79 (¶ 8). Section 11-46-11(1) requires a person to file a notice of claim with the chief executive officer of the governmental entity at least ninety days before instituting suit. Miss. Code Ann. § 11-46-11(1) (Rev. 2012).

¶17. The Court examined the pertinent provisions of the Tort Claims Act and concluded that "Sections 11–46–5(2) and 11–46–7(2) expressly provide that an employee shall not be considered as acting within the scope and course of his employment for conduct amounting to defamation, libel and slander, the very charges brought by [the plaintiff] against [the government employee defendant]." *Id*. at 81 (¶ 11). The Court did "not construe [Section] 11–46–11(1) as requiring notice to [the government employee defendant] or other government authorities of suit brought against him individually for acts outside of the scope of his employment." *Id*.

¶18. The Court held that "an action against a government employee in his individual capacity may be subject to notice of claim requirements if the act complained of occurred within the scope and course of his employment[.]" *Id*. at 80 (¶ 10) ("Where the plaintiff elects to sue the governmental employee in her individual capacity, notice is required only if the act or omission causing the plaintiff's loss is within the scope of the defendant's employment.")). Accordingly, the Court concluded that the "notice provisions of [Section]

11-46-1(1) [were] not applicable to a government employee sued in his individual capacity for actions not within his scope of employment[.]" *Id*. at 78 (¶ 1).

¶19.  In *Zumwalt*, Donna Zumwalt asserted counterclaims for tortious interference with contracts and business relations against the Jones County Board of Supervisors.  *Zumwalt*, 19 So. 3d at 688 (¶ 79).  The trial court found that her claims were not properly before it because Zumwalt had failed to comply with the Tort Claims Act's notice provision of Section 11-46-11 before she had asserted her counterclaim.  *Id*. at 688 (¶ 80).

¶20.  The Court held: "[w]ith respect to the claim of tortious interference with business relations and/or contracts, the [Tort Claims Act] does not apply." *Zumwalt*, 19 So. 3d at 688 (¶ 81).  The Court explained:

> The [Tort Claims Act] provides immunity for the alleged torts of governmental entities. Miss. Code Ann. § 11–46–3 (Rev. 2002).  However, the [Tort Claims Act] waives that immunity, and the governmental entity is liable, for injuries caused by the entity or its employees while acting in the course and scope of their employment.  Miss. Code Ann. § 11–46–5(1) (Rev. 2002).
>
> Certain intentional torts are excluded from the [Tort Claims Act]'s waiver of immunity. Subsection (2) of Mississippi Code Section 11–46–5 provides that torts constituting fraud, malice, libel, slander, defamation, or any criminal offense other than traffic violations are not within the course and scope of employment.  Miss. Code Ann. § 11–46–5(2) (Rev. 2002).  Thus, these intentional torts are outside the scope of the [Tort Claims Act]'s waiver of immunity, and the [Tort Claims Act] does not apply.
>
> Tortious interference with business relations and contracts requires proof of malice as an essential element.  *Par Industries, Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998), and *Biglane v. Under the Hill Corp*., 949 So. 2d 9, 16 (Miss. 2007).  Therefore, the [Tort Claims Act] does not apply to these torts, and any legal action against a governmental employee for these intentional torts must necessarily proceed against him or her as an individual.

*Zumwalt*, 19 So. 3d at 688 (¶¶ 81-84).

¶21. The Court held that, to the extent the trial court had determined that notice was required before pursuing claims of tortious interference with either business relations or contracts, it was error, albeit harmless error because there were no facts to support Zumwalt's claims. *Id*. at (¶ 85).

¶22. Less than two years after *Zumwalt*, the Court decided *Whiting*. *Whiting*, 62 So. 3d 907. In *Whiting*, a nontenured professor at the University of Southern Mississippi, Dr. Melissa Whiting, was denied tenure and promotion at the end of her sixth year at the university after participating in the tenure application process laid out in the faculty handbook.[3] Dr. Whiting filed a complaint, alleging that the denial arose from ill will between her and her department chair, Dr. Dana Thames, the daughter of the university president, Dr. Shelby Thames. *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 340 (5th Cir. 2006). Dr. Whiting complained of violations of her constitutional rights and also raised "breach of contract and other claims under state law." *Id*. at 343. The case was removed to federal district court, which dismissed her constitutional claims on a motion for summary judgment and remanded the state-law claims to state court. *Id*. The state trial court dismissed Dr. Whiting's claims against the Mississippi Board of Trustees of Institutions of Higher Learning, the University of Southern Mississippi, Dr. Shelby Thames, Dr. Dana Thames, and Dr. Carl Martray.[4] *Whiting*, 62 So. 3d at 910 (¶1). Dr. Whiting appealed, and the Court

---

[3] Additional factual and procedural background information is derived from *Whiting v. University of Southern Mississippi*, 451 F.3d 339, 352 (5th Cir. 2006) (affirming the district court's order remanding Dr. Whiting's pendent state-law claims to state court)).

[4] Dr. Martray was the Dean of the College of Education and Psychology.

affirmed. *Id*.

¶23. The Court held that, as a matter of law, no contract was formed between Dr. Whiting and the Board with respect to an offer of tenure to the extent that Dr. Whiting's claims were based purely upon a breach of contract theory. *Id*. at 915 (¶ 13). Although the Court made no mention of *Zumwalt*, *McGehee*, or malice as an essential element of tortious interference with a contract, the Court said:

> At the core, Dr. Whiting's argument, to the extent that it makes out a specific claim for relief, is that her contract with the Board, as memorialized in the handbook, guaranteed a fair and impartial hearing with respect to her tenure application, and the defendants denied her that opportunity. While [Dr. Whiting] attempts to characterize [her] claims as breach of contract, a fair reading of the facts of this case and the manner in which [she] lays out her argument establish that if there were a claim to be made, it would be for tortious breach of contract and tortious interference with contract. As such, the claims made against the Board or the university are governed by the provisions of the [Tort Claims Act].

*Whiting*, 62 So. 3d at 915 (¶ 15).

¶24. The Court acknowledged that the Board was "immune from suit at law or in equity on account of any wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract[.]" *Id*. at 915 (¶ 16) (quoting Miss. Code Ann. § 11-46-3(1)). The Court continued: "We have interpreted the phrase 'any wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract' to mean that the [Tort Claims Act] covers both tortious breaches of contract and breaches of implied terms and warranties of a contract." *Whiting*, 62 So. 3d at 916 (¶ 17) (citing *City of Jackson v. Estate of Stewart ex rel. Womack*, 908 So. 2d 703, 710 (Miss. 2005)).

¶25. The Court noted that the Tort Claims Act provides a limited waiver of immunity for

11

claims arising from tortious acts of governmental agencies and their employees. *Whiting*, 62 So. 3d at 916 (¶ 16). However, the Court also noted that the Tort Claims Act provides that a notice of claim must be brought only after all administrative remedies have been exhausted. *Id.* at 916 (¶ 17) (citing Miss. Code Ann. § 11-46-11). The Court recognized that the failure to complete the internal grievance process for an alleged wrongful termination does not satisfy the requirement that administrative appeals be exhausted for purposes of the Tort Claims Act. *Id*. Because Dr. Whiting failed to wait for a final decision by the Board regarding approval of her application for tenure prior to filing suit, the Court held: "[Dr. Whiting's] claims based on tortious conduct in general, tortious breach of contract in particular, and breach of an implied contractual term or warranty are foreclosed by her failure to adhere to the requirement of the Mississippi Tort Claims Act that all administrative remedies be exhausted prior to filing suit." *Id*. at 919 (¶ 31).

¶26. Following *Whiting*, conflicting decisions have arisen in the federal courts and the Court of Appeals regarding whether malice-based torts are subject to the Tort Claims Act. *See Dearman v. Stone Cty. Sch. Dist*., 2014 WL 3747600, at *2 (S.D. Miss. July 29, 2014) ("While *Whiting* and *Zumwalt* may appear contradictory, the Mississippi Supreme Court in *Whiting* did not reference or explicitly overrule *Zumwalt*. It is therefore unclear whether the Mississippi Supreme Court intended for *Whiting* to overrule *Zumwalt* or whether the two cases are somehow distinguishable. The apparent conflict between the two cases has led to inconsistent decisions by federal district courts applying Mississippi law."). For example, in *Weible v. University of Southern Mississippi*, 89 So. 3d 51, 64 (¶ 40) (Miss. Ct. App.

2011), the Court of Appeals followed *Zumwalt*, holding that "to the extent intentional infliction of emotional distress is predicated on malicious conduct, the claim would be outside the scope of the [Tort Claims Act]." Likewise, the Court of Appeals recently acknowledged that "because the Tort Claims Act expressly does not apply to claims for defamation or slander, it necessarily follows that the Tort Claims Act's notice provision does not apply to [the plaintiff's] slander claim." *Williams v. City of Belzoni*, 2017 WL 908844, at *4 (Miss. Ct. App. Mar. 7, 2017) (citing *Zumwalt*, 19 So. 3d at 688 (¶ 85); *McGehee*, 708 So. 2d at 79-81 (¶ 7-11)). To the contrary, the Fifth Circuit Court of Appeals followed *Whiting* as "the latest and most authoritative expression of state law applicable to the facts of a case." *Johnson v. City of Shelby, Miss*., 743 F.3d 59, 64 (5th Cir. 2013), *cert. granted, judgment rev'd*, 135 S. Ct. 346 (2014). The Fifth Circuit Court of Appeals held that former police officers' claims for malicious interference with their employment contracts were barred for failure to comply with the Tort Claims Act's notice requirements. *Id*. at 61, 64.

¶27. In the case *sub judice*, the Court of Appeals followed *Whiting* in reaching its alternative holding, particularly, the language from *Whiting* indicating that claims for tortious breach of contract and tortious interference with contract were governed by the provisions of the Tort Claims Act. *Springer*, 2016 WL 4083981, at **4-5 (¶¶ 17-19, 22).

¶28. After reviewing the Court's opinion in *Whiting*, we do not perceive the same conflict between *Whiting* and *Zumwalt* as the Court of Appeals did. Significant differences are apparent upon comparing the two decisions. To begin with, the decision in *Whiting* did not turn on the presuit notice provision of the Tort Claims Act, therefore, any indication that a

13

claim for tortious interference with a contract is subject to the notice requirements of the Tort Claims Act was mere dicta. The decision in *Whiting* turned on the exhaustion provision of Section 11-46-11(1), which requires a claim to be brought only after all administrative remedies have been exhausted. *Whiting*, 62 So. 3d at 916, 919 (¶¶ 17, 31).

¶29. Moreover, Dr. Whiting's claims generally were described as "breach of contract and other claims under state law." *Whiting*, 451 F.3d at 343. The specific claims brought by Dr. Whiting were not identified. Because "a fair reading of the facts of th[e] case and the manner in which Dr. Whiting la[id] out her argument establish[ed] that if there were a claim to be made," the Court concluded that it "would be for tortious breach of contract and tortious interference with contract." *Whiting*, 62 So. 3d at 915 (¶ 15). The claims as framed by the Court were then properly examined for Tort Claims Act application.

¶30. In order to constitute tortious breach of contract alleged by a plaintiff, "some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort must exist." *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 66 (¶ 39) (Miss. 2004). In contrast to tortious interference with a contract claim requiring proof of malice as an essential element, a tortious breach of contract claim may be proven without proof of malice. *Id*. Consequently, a tortious breach of contract claim may be subject to the presuit notice requirements of the Tort Claims Act. *See Zumwalt*, 19 So. 3d at 689 (¶ 86) ("Conversion, on the other hand, is an intentional tort that does not require proof of fraud, malice, libel, slander, or defamation. Thus, conversion is an intentional tort arguably subject to the Tort Claims Act, so pre-suit notice to the governmental entity of such a claim generally

14

is required.")) (internal citations omitted). Despite mentioning a claim for tortious interference with a contract, the Court's remaining discussion focused on the relabeled tortious breach of contract claim. *Whiting*, 62 So. 3d at 916 (¶ 16) ("We have interpreted the phrase 'any wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract' to mean that the [Tort Claims Act] covers both *tortious breaches of contract* and breaches of implied terms and warranties of a contract.")) (citations omitted) (emphasis added). Indeed, the Court's holding emphasized that Dr. Whiting's "claims based on tortious conduct in general, tortious breach of contract in particular, and breach of an implied contractual term or warranty [were] foreclosed by her failure to adhere to the [notice] requirement of the [Tort Claims Act.]" *Id*. at 919 (¶ 31).

¶31. Like the uncertainty of the specific claims brought by Dr. Whiting, we can only speculate as to whom Dr. Whiting's claims were against. The only claims addressed by the Court were against the Board and the university. *Id*. at 915 (¶ 15) ("As such, the claims made against the *Board* or the *university* are governed by the provisions of the [Tort Claims Act].").  Dr. Whiting's claims against university employees in their individual capacities, if any, were not discussed by the Court.  We simply cannot say whether Dr. Whiting alleged that certain individuals had acted outside their scope of employment, which would remove them from the protections of the Tort Claims Act. *See Zumwalt*, 19 So. 3d at 688 (¶¶ 83-85); *McGehee*, 708 So. 2d at 81 (¶ 11).

¶32. Because the facts and circumstances in *Whiting* differ from *Zumwalt* in a number of significant ways, it is not necessary to overrule *Whiting*.  As such, we hold that *Whiting* did

not overrule, *sub silentio*, **Zumwalt** or **McGehee**. However, due to the conflicting decisions that have arisen in district courts and the Court of Appeals, we overrule **Whiting** to the extent it held that a claim for tortious interference with a contract is subject to presuit notice requirements of the Tort Claims Act.

¶33.    In the case *sub judice*, Ausbern filed a complaint against Springer in his individual capacity for tortious interference with the road-construction contract between the County and Ausbern.   "The [Tort Claims Act] provides specific exclusions to its protections and requirements, and each claim must be examined for [Tort Claims Act] application." **Zumwalt**, 19 So. 3d at 688 (¶ 81).  The Tort Claims Act waives immunity for injuries caused by governmental employees while acting in the course and scope of their employment.  Miss. Code Ann. § 11-46-5(1).  However, Section 11-46-5(2) provides that torts constituting malice are not within the course and scope of employment.

¶34.    Tortious interference with a contract requires proof of malice as an essential element. *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (¶ 8) (Miss. 1998).  As a result, Ausbern's claim for tortious interference with the road-construction contract against Springer in his individual capacity was not subject to the Tort Claims Act's presuit notice requirements.  *McGehee*, 708 So. 2d at 81 (¶ 11).  Ausbern's claim necessarily was brought against Springer individually for acts allegedly outside the scope of his employment, and the trial court properly denied Springer's motion to dismiss due to lack of presuit notice.  *Id.*  In light of the relevant provisions of the Tort Claims Act and the Court's unequivocal decisions in *McGehee* and **Zumwalt**, we hold that Ausbern's claim against Springer in his individual

16

capacity for acts allegedly outside the scope of his employment are not subject to the presuit notice requirements of Section 11-46-11(1).

## CONCLUSION

¶35.    We affirm the Court of Appeals' judgment on the dispositive issue of no evidence of malice, an essential element of a claim of tortious interference with a contract. However, for the foregoing reasons, we hold that the Court of Appeals erroneously concluded that under *Whiting*, Ausbern's claim was subject to the presuit notice requirements of Section 11-46-11(1).

¶36.    **AFFIRMED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, BEAM AND CHAMBERLIN, JJ., CONCUR.    MAXWELL AND ISHEE, JJ., NOT PARTICIPATING.**

17